In the Matter of the Application for a Writ of Habeas Corpus
of ROBIN OLSON et al.

ANNETTE OLSON, Petitioner, v. ALFRED J. CHASE et al.,
Respondents.

*Norman R. Rosenberg* and *John Jarrett* of *Spokane County Legal Services,* for petitioner.

*Jon Phelps* (of *Engst, Phelps & Young*), for respondents.

MUNSON, J.—Annette Olson filed an original petition for writ of habeas corpus in this court, seeking custody of her two minor children, 11 months after an order depriving her of them had been entered by the Juvenile Court for Chelan County. She further requests a reference hearing to the Superior Court for Chelan County, before a judge other than the resident judge, who had previously denied a writ of habeas corpus filed therein by petitioner. The petition is denied.

In 1972, petitioner had been temporarily deprived of one child while she was residing in Chelan County, but custody had been restored to her. On Friday, March 6, 1973, petitioner was deprived of the children's physical custody by the Department of Social and Health Services (hereafter DSHS). The following Monday a dependency petition was filed and the children placed in the custody of respondents. In Spokane, on March 27, 1973, petitioner was served with a copy of the dependency petition, notice and summons, along with an information sheet entitled "General Information for Parents." A hearing on the petition was set for June 4, 1973.

The pertinent part of the petition and the notice and summons state that the children are dependent in that:

> the parents, or guardian, are incapable of, have failed to, or neglected to provide for proper maintenance, training

and education for such children; that they have no parents or guardian willing to exercise, or capable of exercising proper parental control and that they are in danger of being brought up to lead idle, dissolute or immoral lives. *The purpose of this hearing is to deprive the parents of said children of their care, custody and parental rights to said children.*

(Italics ours.)

About April 13, 1973, petitioner contacted an attorney with the Spokane County Legal Services. The same day, she received a summons and divorce complaint from her husband in Minnesota, indicating that he intended to obtain custody of the children. Petitioner asserts she discussed with counsel the possibility of foster care as contrasted to custodial care with her husband and chose the latter. For that reason she did not file an appearance in the dependency proceeding. It is petitioner's contention before this court that she believed this was another temporary dependency proceeding and that both the petition and the notice and summons were couched in language insufficient to put her on notice that it was a permanent deprivation proceeding.

The juvenile court received no response from petitioner prior to the June 4 hearing, nor did she appear on that date. The hearing was conducted by a court commissioner, a customary practice in Chelan County.

Petitioner alleges that on June 11, 1973, she had a DSHS caseworker in Spokane call the Chelan County office and advise that petitioner was desirous of defending the petition, but was unable to attend at that time. Apparently there was no response from this inquiry, nor was her request conveyed to the juvenile court. A copy of petitioner's memorandum of authority filed in the Superior Court for Chelan County in support of a prior application for a writ of habeas corpus January 1974 alleges petitioner was in jail on or about June 11, 1973. The formal order of deprivation was entered June 13, 1973. No revision was sought from this order pursuant to RCW 2.24.050, nor was a writ of certiorari sought to review that order.

Petitioner's memorandum of authorities, filed in support of this application, alleges she contracted hepatitis and spent approximately 40 days in a Spokane hospital; the dates of that confinement are not set forth. While in the hospital she again contacted the Spokane County Legal Services office, which resulted in a petition for writ of habeas corpus being filed in Chelan County December 27, 1973. That matter came on for hearing on January 16, 1974; findings of fact, conclusions of law and an order denying that petition were entered February 4, 1974. No appeal was taken. Petitioner's original writ was filed with this court May 14, 1974.

■ Our original jurisdiction of an application for writ of habeas corpus, Const. art. 4, § 30 (amendment 50); RCW 2.06.030; RCW 7.36.040; CAROA 56, is nonexclusive. Both the Supreme Court and the superior courts have original jurisdiction pursuant to Const. art. 4, § 4 and Const. art 4, § 6 (amendment 28), respectively. *Cf. Holt v. Morris,* 84 Wn.2d 841, 529 P.2d 1081 (1974). However, the fact that all courts of record in this state do possess original jurisdiction does not entitle a petitioner to apply to each court, or each judge thereof, once a petition asserting the same grounds has been presented and been denied. *In re Graham,* 7 Wash. 237, 34 P. 931 (1893). Here, petitioner sought neither revision nor a writ of certiorari from the original determination of deprivation and has not appealed from the denial of the previous writ of habeas corpus filed in the Superior Court for Chelan County. Our inclination to deny her application summarily was overcome for three reasons: First, the challenge petitioner makes to a court commissioner's power to preside over a deprivation proceeding; secondly, the constitutional right of a parent in a permanent deprivation proceeding to legal counsel and, if indigent, to counsel at public expense, *In re Luscier,* 84 Wn.2d 135, 524 P.2d 906 (1974); and thirdly, petitioner's challenge to adequacy of the notice to accurately convey the nature of the proceeding. While petitioner raises other grounds, we consider them to be without merit.

■ Const. art. 4, § 23, provides:

There may be appointed in each county . . . one or

more court commissioners, . . . who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.

In *State ex rel. Lockhart v. Claypool*, 132 Wash. 374, 232 P. 351 (1925), the court held article 4, section 23 to be self-executing and that a court commissioner had all the powers a judge of the superior court had, at chambers, at the time of the adoption of the state constitution. The question then becomes: what were the powers of a judge at chambers at that time? This question was also answered in *State ex rel. Lockhart v. Claypool, supra,* as follows at page 375:

At the time the constitution was adopted, the powers of a judge at chambers, as defined by § 2138 of the code of 1881, p. 368, were these:

"The several judges of the district courts in this territory, and each of them in their respective districts, may, at chambers, in vacation, entertain, try, hear and determine, all actions, causes, motions, demurrers and other matters not requiring a trial by jury; . . ."

In *Peterson v. Dillon*, 27 Wash. 78, 67 Pac. 397, speaking with reference to whether the court commissioners had such power as a judge at chambers at the time of the adoption of the constitution, it was said:

"Under our present system, when an act of a judicial nature is performed by the judge, it is, in contemplation of law, done in open court, although the act may in reality be done in the private room or office of the judge. When the framers of the constitution used the term 'at chambers' in speaking of the duties performed by the judge at chambers, they had in view a certain object, and, in order to ascertain what this was, we must have recourse to the meaning of the term 'at chambers' as it was understood at the time this particular provision of the constitution was framed.

and at page 377:

Our conclusion is that the court commissioner has, under the constitutional provision giving him such power as a judge at chambers, the same powers which a judge at

chambers had the right to exercise at the time of the adoption of the constitution, as above set out.

■ A jury trial is not required in a juvenile proceeding. *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971). Thus, we conclude that it is within the constitutional power of a court commissioner to preside over juvenile proceedings.

■ Petitioner contends, however, that under RCW 13.04.030,[1] the court commissioner here had no such power because Chelan County has a resident Superior Court Judge. We disagree. The powers of a court commissioner are vested by the constitution. This granted power is supreme; while the legislature has power to add to those specifically set forth in the constitution, so long as those powers pertain to the administration of justice, the legislature cannot take away a constitutional grant of power. *Howard v. Hanson,* 49 Wash. 314, 95 P. 265 (1908). Thus, we conclude that a court commissioner has the power to preside over, and enter orders in, a permanent parental deprivation hearing in juvenile court, subject to revision by the superior court upon application pursuant to RCW 2.24.050.

Secondly, petitioner contends that under *In re Luscier, supra,* she was entitled to be advised of her right to have counsel represent her at the deprivation hearing and to further be advised that, if indigent, counsel would be appointed for her at public expense. The basic question is whether *In re Luscier, supra,* must be applied retroactively.

■■ For the reasons expressed in *Brumley v. Charles R. Denney Juvenile Center,* 77 Wn.2d 702, 466 P.2d 481 (1970), where the court declined to apply *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), retroactively, we do not believe *Luscier* should be given retrospective

---

[1]"In counties in which there is no resident judge of the superior court, the court commissioner shall have the power, authority and jurisdiction, concurrent with the superior court and the judge thereof, to hear all matters relating to dependent and delinquent children, and to enter judgment and make orders with the same power, force and effect as any judge of the superior court, . . ."

application. *Gault* held that an indigent juvenile must be afforded appointed legal counsel in delinquency adjudication proceedings unless there be an appropriate waiver. However, *Brumley* refused to apply *Gault* retroactively to adjudicatory proceedings which had become final. In *Brumley*, the court interpreted *Linkletter v. Walker*, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965), and its progeny, to the date of that opinion, and reasoned from three factors utilized in resolving the issue of retroactivity:

> (1) The purpose of the new rule and whether retroactive application of the rule would effectively serve that purpose; (2) whether and to what extent law enforcement agencies, including courts, justifiably relied upon the pre-existing rule; and (3) the effect of retroactive application upon the administration of justice, including the number of jurisdictions whose past procedures did not measure up to the new rule, the probable percentage of those individuals whose former trials would be invalidated by retroactive application of the new rule coupled with the practical difficulties which would be encountered in retrials of such persons, and the availability of remedies to correct the deficiencies aimed at by the new rule other than invalidation of former proceedings. All three factors must be examined, and the process is one of balancing each against the other.

*Brumley v. Charles R. Denney Juvenile Center, supra* at 707.

As noted previously, the order of deprivation in this case became final prior to the decision in *In re Luscier, supra*. Thus, this was not a case pending at the time of rendering that decision. Under *Brumley*, retroactivity should not be applicable.

Applying this three-pronged test, we would concede that the first factor is enticing, to insure that a fair and judicious hearing was conducted prior to reaching the decision that deprivation was the proper disposition. Assistance of counsel at such a proceeding has been recognized as necessary to insure the integrity of those proceedings. *In re Luscier, supra*. However, petitioner does not challenge any specific

fact which may have been determined in that proceeding to support deprivation.[2]

The second factor, the extent of reliance upon the old standards, is applicable here in that the information provided petitioner at the time petition was served upon her did not contain the constitutional requirement of *In re Luscier, supra.*

However, it is the third factor, namely the effect upon the administration of justice, that convinces us that *In re Luscier, supra,* should not be held to have retroactive application. As the court stated in *Brumley,* such application would have an effect "little short of devastating." All deprivation proceedings to date which have become final and in which the parents had not been advised of the rights proclaimed in *In re Luscier, supra,* could be swept aside by retroactive application. Thus, the children who had been taken from their parents up to 17 years ago and subsequently adopted could find the entire process overturned. The chaotic upheaval which this could cause in uncountable lives makes it a necessity that we apply *In re Luscier, supra,* prospectively only. Our analysis of the application of these factors from *Linkletter v. Walker, supra,* and its progeny through *Gosa v. Mayden,* 413 U.S. 665, 37 L. Ed. 2d 873, 93 S. Ct. 2926 (1973), convinces us that such a holding is just.

The third issue raised is the adequacy of the contents of the petition and the notice and summons to appraise petitioner that this was a permanent deprivation proceeding. We believe the test of adequacy is comparable to that set forth in *Glaspey & Sons, Inc. v. Conrad,* 83 Wn.2d 707, 710, 521 P.2d 1173 (1974), pertaining to the adoption or amendment of zoning ordinances, which requires "that the notice reasonably apprise interested parties of the contemplated action that is pending." Admittedly, the language in this petition, notice, and summons was not couched in the language found

---

[2]Petitioner's allegation that DSHS did not comply with RCW 74.12.240 *et seq.,* and RCW 74.13.040, providing rehabilitative and protective services to her to regain and maintain the parent-child relationship, is not a challenge to the evidence supportive of the court order.

in *In re Martin*, 3 Wn. App. 405, 476 P.2d 134 (1970), nor did the body of the petition or notice use the specific words "permanent deprivation," nor that the children would be "placed for adoption" if the evidence supported the petition. However, our reading of these documents satisfies us that the statement that the "purpose of this hearing is to deprive the parents . . . of their care, custody and parental rights to said children," would apprise them "as interested parties of the contemplated action that is pending." *In re Martin, supra; In re Ross*, 45 Wn.2d 654, 277 P.2d 335 (1954).

We note in passing that the petitioner's contention that the absence of the prosecuting attorney to attend these proceedings somehow jeopardized her, is based on *State v. Cook*, 9 Wn. App. 227, 512 P.2d 744 (1973). Her contention is not well taken, in light of that case being reversed in *State v. Cook*, 84 Wn.2d 342, 525 P.2d 761 (1974). Furthermore, regarding the alleged telephone call from the Spokane caseworker to the Chelan caseworker and the latter's failure to inform the court of petitioner's alleged interest is not a basis for granting this writ. Such a request must be to the court, not to an interested party in the proceeding. *State v. Christensen*, 75 Wn.2d 678, 684, 453 P.2d 644 (1969). Thus, *In re Maurer*, 12 Wn. App. 637, 530 P.2d 1338 (1975), is distinguishable.

The writ is denied.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied March 10, 1975.

Review denied by Supreme Court May 23, 1975.