[No. 12326-6-II.   Division Two.   April 24, 1990.]

*In the Matter of the Marriage of* JACQUELYN G. SIMPSON, *Respondent, and* PETER L. SIMPSON, *Appellant.*

*James Sells,* for appellant.

*Constance Bartholomew,* for respondent.

ALEXANDER, C.J.—Peter Simpson appeals an order of the Kitsap County Superior Court denying his motion for reconsideration and/or recalculation of child support. We reverse and remand.

Jacquelyn Simpson and Peter Simpson were married in 1977. In 1979 their only child, Brett, was born. In August 1987, the Simpsons separated. In the following month, Jacquelyn commenced an action in Kitsap County Superior Court for dissolution of the marriage. A decree of dissolution was entered 1 year later.

The decree provided that Jacquelyn was to be the "principal residential parent," but Peter was awarded substantial "physical care" of Brett. Although the decree did not

set forth the number of days and nights Brett was to be in Peter's physical care during the course of a year, the parties agree that it provides Peter with 120 "overnights" with Brett.

The trial court ordered Peter to pay $480 per month as child support. Peter's child support obligation was, however, to be reduced by one–half during July and August, if Peter "has care of the child for at least 14 days each month." In determining Peter's support obligation, the trial court utilized, in part, a worksheet that was developed by the Washington State Child Support Schedule Commission for use in conjunction with the statewide child support schedule. Although it did not indicate that it intended to deviate from the schedule, the trial court did not fill out the portion of the worksheet entitled "Residential Schedule Adjustment." As a consequence, it did not give Peter any credits for his overnights with Brett.

Peter moved for "reconsideration and recalculation of the child support obligation," contending that the trial court had not given him the benefit of an overnight credit. He argued that his child support obligation would have been $336.78 per month, rather than $480 per month, had the required credit been given. Jacquelyn does not dispute that Peter's support obligation would have been at the lower level if the worksheet had been followed. Rather, she contends that the trial court had the discretion to ignore the residential schedule adjustment. The trial court, although conceding that "it didn't give visitation credit," denied the motion.

The sole issue before us is this: Did the trial court err in calculating the amount of child support to be paid by Peter?

To answer this question, we must review a recent enactment of the Washington Legislature. In 1988, the Legislature adopted RCW 26.19, which established a statewide child support schedule. The purpose of the legislation was to increase the equity and adequacy of child support orders. RCW 26.19.001(1), (2). The statute provides that a child

support schedule is to be prepared by a child support schedule commission. RCW 26.19.030(1). The commission is required to review the schedule periodically and propose changes to the Legislature as needed. RCW 26.19.040(4).[1] In addition, the commission is to adopt a "worksheet" and "instructions" to be used in conjunction with the schedule in determining the amount of child support. RCW 26.19-.030(1); RCW 26.19.010(4), (5). In any dissolution proceeding in which child support is at issue, the amount of support "shall be determined and ordered" according to the child support schedule. RCW 26.19.020(1)(a).[2] Furthermore, worksheets in the form approved by the commission are to be completed in every proceeding in which child support is an issue and variations to the worksheets are not to be accepted. RCW 26.19.020(4). A trial court may deviate from the schedule only if it sets forth in its findings of fact its reasons for not observing the "standard calculation" of support. RCW 26.19.020(5).

Given the language of RCW 26.19.020 that support is to be determined and ordered in accordance with the schedule, and that worksheets "shall be completed," it is obvious that the trial court erred here. We reach this conclusion because there is no dispute over the fact that Peter Simpson was awarded 120 overnights with Brett. It is also clear that he was given no credit against his support obligation for the time he was to spend with Brett pursuant to the decree. If the trial court had entered the 120 overnights

---

[1]If the commission fails to make its required presentation, the existing schedule remains in effect unless the Legislature refers the schedule back to the commission for modification. RCW 26.19.040(5). If a schedule is presented, the Legislature may adopt it or refer it back to the schedule commission for modification. If, however, the Legislature fails to adopt or refer the proposed schedule, the schedule takes effect without legislative approval. RCW 26.19.040(6).

[2]The legislation provides that the superior court judges of any superior court, by majority vote, may adopt local rules which vary the statewide schedule, provided the variance is not more than 25 percent. RCW 26.19.020(1)(b). At the time the decree was entered here, the Superior Court Judges of Kitsap County had not adopted such a local rule.

into the standard calculation, using the worksheet approved by the commission, Peter's support obligation would have been lower as he contends. A trial court, as we have noted, has no discretion to ignore any part of the worksheet. The simple fact is that by ignoring an important section of the standard worksheet in making its support calculation, the trial court varied from the support schedule. This it cannot do. RCW 26.19.020(4). In our judgment, this failure is of the same magnitude as a failure to fill out the worksheet in its entirety, a practice which was found to be error in *In re Marriage of Sacco*, 114 Wn.2d 1, 784 P.2d 1266 (1990).

We are mindful of the fact that the trial court allowed a 50 percent reduction in Peter's monthly support obligation during July and August, provided he exercised his summer visitation rights. Even if applied, that reduction in support does not begin to approach the difference between the support actually ordered by the trial court and the amount which should have been paid had the trial court properly utilized the worksheets in determining the child support obligation.

▮ Jacquelyn's counsel argued to this court that pursuant to the "standards"[3] adopted by the commission, a parent seeking a reduction in his or her child support obligation for residential credit must make a showing of past involvement with the child. In the absence of such a showing, she argues, the trial court is free to deny residential credits. Our review of the record does not disclose that this argument was made to the trial court. Indeed, it was not even mentioned in her brief to this court. Furthermore, the trial court made no findings on this issue. We will not assume from a silent record that such a showing was either made or not made, or that the court even considered this argument.[4] Because the record is devoid of any evidence on

---

[3]"The commission shall establish standards for applying the child support schedule. . . ." RCW 26.19.040(3).

[4]As a practical matter, before a decree is entered it would be difficult for a parent to make a showing of past involvement with the child. In many cases, the

this matter, we must reject Jacquelyn's argument. *State v. Blight,* 89 Wn.2d 38, 46–47, 569 P.2d 1129 (1977); *State v. Rienks,* 46 Wn. App. 537, 545, 731 P.2d 1116 (1987).

Finally, Jacquelyn argues that if Peter receives the residential schedule adjustment, as well as the summer support reduction, he will receive credit twice for the summer overnights. This concern is justified and, therefore, upon recalculation, the trial court may give residential credit only for the precise number of overnights established in the decree.

We reverse and remand for a redetermination of Peter's child support obligation consistent with this opinion.

REED and PETRICH, JJ., concur.

---

separation of the parties would only have been of short duration and thus, an extensive record of visitation would be lacking. In our judgment, such a standard would be more useful in cases where modifications of custody and visitation are sought.