[No. 15713-6-II. Division Two. January 12, 1994.]

THE STATE OF WASHINGTON, *on the Relation of William Brandon Henderson, Respondent,* WANDA FAYE EDWARDS, *Statutory Party,* v. WILLIAM OLIVER WOODS, *Appellant.*

---

*Grace S. Wagner,* for appellant.

*C.C. Bridgewater, Prosecuting Attorney,* and *Jill Johanson, Deputy,* for respondent.

SEINFELD, J. — William Woods appeals from a finding of paternity and a judgment for back child support and future child support. We reverse in part, affirm in part, and remand for rehearing.

## FACTS

The State Department of Social and Health Services, represented by the Cowlitz County Prosecutor, filed a "Petition for Determination of Paternity" of the minor child William Brandon Henderson, born June 26, 1975. On October 21, 1991, a superior court commissioner presided over a hearing on the petition. In attendance were William Oliver Woods, the respondent and alleged father, and Wanda Faye Edwards, the statutory party and mother, each appearing pro se, and a deputy prosecuting attorney representing the State.

We do not have a record of that proceeding as the trial court did not employ a court reporter or use an electronic recording device to make a verbatim record. A clerk simply made minute entries as to the time the proceedings began; the identity of parties, counsel and witnesses present; the time each witness testified; the nature of exhibits offered or

admitted; and a summary of the court's rulings. According to that minute entry, at the conclusion of the hearing the trial court declared Woods to be Henderson's natural father and ordered Woods to pay $600 per month current child support and $12,600 back child support.

The deputy prosecutor presented, and the court signed, detailed findings of fact and conclusions of law on December 16, 1991. Conclusion of law 3 provides that Henderson's name "shall be changed to William Brandon Edwards." Two weeks later, on December 30, 1991, the State filed the "Washington State Child Support Schedule Worksheets" along with the findings and judgment.

The findings of fact indicate that before the hearing "paternity blood testing was performed on the parties herein, the results of which indicate a 99.28 percent probability of paternity in Respondent, William Oliver Woods." The record does not reflect who performed the blood tests, the date of the tests, or the test conditions. The State did not present expert testimony regarding the tests or offer a report of the test results into evidence. After reviewing the blood test results in open court, Woods acknowledged his paternity of Henderson.

The State did introduce into evidence Woods's Internal Revenue Service W-2 wage and tax statements for 1988, 1989, and 1990 along with three of Woods's weekly paycheck stubs from April through May 1991. The findings and conclusions state that Woods is capable of "having an average earnings of approximately $3,250 net per month" and that Edwards earns approximately $834 net per month.

Woods appeals, seeking vacation of the judgment; dismissal with prejudice of the petition for determination of paternity; reimbursement, with interest, of all funds paid to Edwards; and an award of costs and attorney fees. He claims that the trial court erred in not obtaining his consent to the court commissioner serving as a judge pro tempore, in concluding that there was sufficient evidence to find he was Henderson's natural father, in not appointing a guardian ad litem to protect Henderson's interests, in not requiring the

State to join as parties all persons known to the State as potential or presumptive fathers, and in improperly calculating child support.

ANALYSIS

Powers of Court Commissioners

Woods asserts that a court commissioner is authorized to preside over a trial only as a judge pro tempore. He notes Washington's constitutional provision that before a judge pro tempore may hear a case, the parties must consent in writing. Woods argues that the commissioner lacked jurisdiction over the case because Woods did not grant written consent. To support his position, Woods refers to article 4, section 7 of our state constitution.

█ Article 4, section 7 does indeed list the requirements which must be met by a judge pro tempore. However, the commissioner presided over the hearing on the petition as a court commissioner, not as a judge pro tempore. The court commissioner is identified as a commissioner in the clerk's minutes, the findings of fact, and the judgment. Nowhere in the record is the commissioner referred to as a judge pro tempore.

█ Article 4, section 23 provides that court commissioners "have authority to perform like duties as a judge of the superior court at chambers".[1] *See also* RCW 2.24. The Supreme Court determined that Const. art. 4, § 23 grants court commissioners "the same powers which a judge at chambers had the right to exercise at the time of the adoption of the constitution". *State ex rel. Lockhart v. Claypool*, 132 Wash. 374, 377, 232 P. 351 (1925). The *Lockhart* court explained:

> At the time the constitution was adopted, the powers of a judge at chambers, as defined by § 2138 of the code of 1881, p. 368, were these:

---

[1]Const. art. 4, § 23 provides: "There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law."

> "The several judges of the district courts in this territory, and each of them in their respective districts, may, at chambers, in vacation, entertain, try, hear and determine, all actions, causes, motions, demurrers and other matters not requiring a trial by jury . . .."

*Lockhart*, at 375. *See also Peterson v. Dillon*, 27 Wash. 78, 83-84, 67 P. 397 (1901).

The legal authority for Woods's paternity hearing, the Uniform Parentage Act, RCW 26.26, provides that actions brought under it will be tried by the court without a jury. RCW 26.26.120(5). Thus, under *Lockhart*, the court commissioner acted within his constitutional authority in presiding over Woods's hearing.

■ Although RCW 2.24.040, which lists the powers of a court commissioner, does not include the authority to hear contested paternity actions, this omission does not deprive the commissioner of the power to hear such suits. The Legislature cannot subtract from the constitutionally based powers of the courts: "Powers given to the commissioner by the constitution, of course, cannot be taken away by any legislative enactment . . .." *Lockhart*, at 377. *See also In re Olson*, 12 Wn. App. 682, 687, 531 P.2d 508, *review denied*, 85 Wn.2d 1010 (1975).

### Sufficiency of the Evidence

■ Woods, pointing to the scant record and absence of recorded proceedings, contends that there is insufficient evidence to support the trial court's finding that he is Henderson's natural father. Woods argues that the findings must be supported by clear, cogent, and convincing evidence. He is incorrect as to the State's burden of proof. The Uniform Parentage Act, RCW 26.26, provides that actions brought under the act are civil actions governed by the rules of civil procedure. RCW 26.26.120(1). "[G]iven our Legislature's clear characterization of these proceedings as civil, the appropriate burden of proof is a preponderance of the evidence." (Footnote omitted.) *State ex rel. McGuire v. Howe*, 44 Wn. App. 559, 569, 723 P.2d 452, *review denied*, 107 Wn.2d 1014 (1986). Clear, cogent, and convincing evidence is required only in

actions rebutting the presumption of paternity. RCW 26.26-.040(2). However, based on our analysis of the consequences of the trial court's failure to make a record, we are unable to conclude that the evidence satisfies even the less demanding preponderance test.

■ The state constitution provides, "the superior courts shall be courts of record . . .." Const. art. 4, § 11. The revised code echoes the constitution: "[t]he superior courts are courts of record . . .." RCW 2.08.030. The accepted definition of a "court of record" is "[a] court that is required to keep a record of its proceedings, and that may fine or imprison." Black's Law Dictionary 319 (5th ed. 1979).

A statute assigns the duty of recording court proceedings to the superior court clerk. "[I]t is the duty . . . of each county clerk for each of the courts for which he is clerk . . . [t]o record the proceedings of the court." RCW 2.32.050(2). Here, not only are we lacking a verbatim report of proceedings, we do not even have a summary of the witnesses' testimony.

Clerk's minutes of the type providing the sole record here do not satisfy the recording requirement. CR 80 states,

> [i]n any civil or criminal proceedings, electronic or mechanical recording devices approved by the Administrator for the Courts may be used to record oral testimony and other oral proceedings *in lieu of or supplementary to* causing shorthand notes thereof to be taken.

(Italics ours.) CR 80. The language of this rule indicates that while the method of recording hearings may change, there must be an adequate record.

■ The appellate court may remand a case for a new trial where the trial court's report of proceedings is inadequate. In *State v. Larson*, 62 Wn.2d 64, 381 P.2d 120 (1963), the defendant claimed that he was denied due process on appeal by an inadequate record. In *Larson*, the court reporter's notes of the trial court proceedings were lost. The trial court provided Larson with its notes which constituted a narrative, rather than a verbatim, report of proceedings. Larson's counsel, who did not represent Larson at trial, maintained that he was unable to test the completeness of the narrative statement and determine what errors to assign to

obtain an adequate review. The Supreme Court granted Larson a new trial, concluding that to satisfy due process, "we must have a 'record of sufficient completeness' for a review of the errors raised by the defendant in a criminal case." *Larson*, at 67 (quoting *Draper v. Washington*, 372 U.S. 487, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963)). *See also Beach v. Board of Adj.*, 73 Wn.2d 343, 438 P.2d 617 (1968) (although abbreviated shorthand notes of board of adjustment hearing available, lack of verbatim record was "fatal defect").

Although this is not a criminal case, paternity proceedings also involve serious due process concerns. *State v. Santos*, 104 Wn.2d 142, 702 P.2d 1179 (1985). Here, the trial court's failure to record the hearing denied Woods a complete record on appeal. His counsel has faced the same difficulties encountered in *Larson*, because she too was not retained until after the initial hearing.

In addition to frustrating Woods's efforts to formulate a challenge to the finding of paternity, the scant record precludes this court from conducting an effective review of a trial court decision which has a serious impact on the child as well as on the parent. The child has a constitutionally protected interest in an accurate determination of paternity. *Santos*, 104 Wn.2d at 146-47. We are not able to determine, based on the record before us, if the State adequately investigated the possibility of other potential fathers or otherwise protected Henderson's interests.

The State's brief did not address the issue of the absence of a record of proceedings. Rather, it implicitly acknowledged the necessity of a record in its repeated argument that we must reject Woods's assignments of error, statement of facts, and arguments because of Woods's failure to cite to the trial court record. The State argues that because of these violations of the Rules of Appellate Procedure, *see* RAP 10.3(a)(4) and (5), we must assume that the evidence supports the findings, and accept the findings as verities.[2]

---

[2]RAP 10.3(a)(4) provides that a brief must contain "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument", and must support each factual statement with a citation to the record.

Generally, the party seeking review has the responsibility of providing the appellate court with a report of proceedings, RAP 9.5(a), which can take the form of a "verbatim report of proceedings", a "narrative report of proceedings", or an "agreed report of proceedings". RAP 9.1(b). However, in light of Woods's and Henderson's due process rights, we believe it inappropriate to assume that the missing record would support the finding of paternity. Further, as Woods was not responsible for the lack of a record, it would be unreasonable to hold that Woods waived his right to a complete record.

This case differs from *State v. Miller*, 40 Wn. App. 483, 698 P.2d 1123, *review denied,* 104 Wn.2d 1010 (1985), in which Division One concluded that Miller, by failing to present affidavits regarding the missing portions of the record, "waived his right to a complete record . . .." *Miller,* at 488. Miller claimed that he could not evaluate the record for appellate error due to a defect in the record. However, only a small and perhaps insignificant portion of the record was missing, the trial court's response to a jury inquiry. Furthermore, Miller had failed to demonstrate any prejudice arising from the absence of a record of the trial court's response.

In contrast to *Miller,* which involved a substantial record flawed by a small gap which the defendant could have cured with supplementary affidavits, here there is no trial record other than the bare outline of the clerk's minute entries. Furthermore, Woods clearly is prejudiced by the absence of a record. The absence of paternity blood test evidence exemplifies this prejudice. Although the blood tests were central to the State's case, our record does not contain a report of the tests, a showing as to chain of custody, or any indication that an expert was present in court to explain them and verify their accuracy.

The trial court may order paternity blood tests upon its own initiative or the motion of one of the parties. RCW 26.26.100(1). When a court orders blood tests:

---

RAP 10.3(a)(5) provides that argument must be supported with "references to relevant parts of the record". Woods's brief does not satisfy either rule.

The tests shall be performed by an expert in paternity blood testing appointed by the court. The expert's verified report identifying the blood characteristics observed is admissible in evidence in any hearing or trial in the parentage action, if (a) the alleged or presumed father has had the opportunity to gain information about the security, validity, and interpretation of the tests and the qualifications of any experts, and (b) the report is accompanied by an affidavit from the expert which describes the expert's qualifications as an expert and analyzes and interprets the results. Verified documentation of the chain of custody of the blood samples tested is admissible to establish the chain of custody. The court may consider published sources as aids to interpretation of the test results.

RCW 26.26.100(1). Assuming that the court ordered the paternity blood tests in this case, the reliability and admissibility of the tests is questionable absent the required supporting documentation. However, according to the findings of fact, the court did base its decision on the blood test analysis along with Woods's admission of paternity in open court. Viewing the limited record before us, the blood test evidence does not support the finding.

The sole remaining basis for the finding of paternity is Woods's admission. As we conclude in our due process and guardian ad litem discussion below, a paternity determination cannot rest solely on the admission of the putative father. Thus, the evidence in the record before us is insufficient to support the finding of paternity.

## Guardian ad Litem

Woods, citing RCW 26.26.090(1),[3] argues that the trial court's failure to appoint a guardian ad litem to represent the minor Henderson constitutes reversible error. The State objects to our consideration of the guardian ad litem issue because Woods did not raise it at trial. However,

Issues affecting fundamental constitutional rights may . . . be raised for the first time on appeal, RAP 2.5(a)(3); *State v. Dic-*

---

[3]RCW 26.26.090(1) provides in pertinent part:

"(1) The child shall be made a party to the action. If the child is a minor, the child shall be represented by the child's general guardian or a guardian ad litem appointed by the court subject to RCW 74.20.310. The child's mother or father may not represent the child as guardian or otherwise. . . ."

*tado*, 102 Wn.2d 277, 287, 687 P.2d 172 (1984), or may be determined by this court as justice may require. RAP 12.2; *State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312 (1979).

*Santos*, 104 Wn.2d at 145-46. As we mentioned above, the child has a constitutionally protected interest in a correct determination of paternity. *Santos,* at 146-47. Furthermore, as this issue may reappear on remand, we believe it beneficial to address it at this time.

The trial court's duty to appoint a guardian ad litem is subject to RCW 74.20.310.[4] RCW 26.26.090(1). The court is not required to appoint a guardian ad litem where

> [t]he action is brought by any prosecuting attorney on behalf of the state and the child when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

RCW 74.20.310(1)(b).[5] Although the prosecuting attorney functions as the child's guardian ad litem in the above situation, in the event the interests of the State and the child are in conflict, the statute provides for the appointment of a guardian ad litem by the court, on its own motion or on motion of a party. RCW 74.20.310(2)-(3).

Here the prosecuting attorney represented the State and the minor child. Woods contends that the State did not properly protect the child's interest in accurately identifying the natural father. We cannot evaluate this claim based on the record before us. We are not, however, reassured by the mere fact that Woods admitted paternity after reviewing the blood tests.

In *Santos*, the Supreme Court found appointment of a guardian ad litem necessary to ensure due process even

---

[4]RCW 74.20.310 was amended effective September 1, 1991 (after commencement of this action but before trial). We apply the amended version.

[5]Prior to the September 1, 1991, change, RCW 74.20.310(2) provided that appointment of a guardian ad litem was not required where

"[t]he action is brought by any prosecuting attorney on behalf of the state, the child, or the natural mother when referral has been made to the prosecuting attorney by the department of social and health services requesting such action.

"The court, on its own motion or on motion of a party, may appoint a guardian ad litem when necessary."

though the alleged father voluntarily admitted paternity. The *Santos* court expressed concern that "there was no scientific proof of parentage and more than one potential father could have been identified with minimum investigation", *Santos*, 104 Wn.2d at 150, and concluded that, "[t]he due process accorded the interests of a child dictates that the procedures of a paternity determination ensure accuracy." *Santos*, at 150 (citing *State v. Meacham*, 93 Wn.2d 735, 737-38, 612 P.2d 795 (1980)). There must be "at least a cursory check into available anthropological and biological evidence of paternity . . .." *Santos*, at 150. When the State functions as the child's guardian ad litem:

> [t]he State should at least identify whether other potential fathers exist (1) by asking the natural mother whether she had sexual relations with any other men within 1 month before or after the calculated date of conception; and (2) by comparing the physical characteristics of the father, child, and mother.

*Santos*, at 150.

If, on retrial, the State produces blood tests that indicate with near certainty that Woods fathered Henderson, and further shows that after reasonable inquiry it was not able to identify any other men with whom Edwards may have been sexually active around the time of conception, the *Santos* rationale would not require the appointment of a guardian ad litem. On the other hand, if the State fails to make the proper showing, the trial court must assure that Henderson's due process interest is protected by the appointment of an appropriate guardian ad litem. Absent a record, we will not assume that the child's interests were protected adequately by the State.

### Presumptive or Alleged Fathers

Woods asserts that the State failed to comply with the mandate of RCW 26.26.090(1) to join all parties known to the State as alleged or presumptive fathers. The State, in its petition, says that Edwards was not married at the time of conception or of birth. The only suggestion of other potential fathers in the limited record appears in the fact that the child's surname, Henderson, differs from that of his mother,

and in conclusion of law 3 in which the trial court orders Henderson's name changed to Edwards. If Woods has any other information, it will be his responsibility to bring that to the attention of the child's representative, either the State or an appointed guardian ad litem, and to the trial court, and to make a record of any information so provided.

### Child Support

In contrast to the paternity determination, Woods's complaint about the child support calculations does not relate to the absence of a trial court record. Rather, he contends that the trial court failed to comply with the requirements of RCW Title 26 in calculating his support obligation by not considering his gross income and by not requiring the completion of all entries on the child support worksheet.

RCW 26.19.035(1)(c) provides that "[t]he child support schedule shall be applied . . . [i]n all proceedings in which child support is determined or modified". "Child support schedule" means the standards, economic table, worksheets, and instructions supplied by RCW 26.19. RCW 26.19.011(2). "An order for child support shall be supported by written findings of fact upon which the support determination is based and shall include reasons for any deviation from the standard calculation." RCW 26.19.035(2). "The court shall not accept incomplete worksheets . . .", RCW 26.19.035(3), nor "ignore any part of the worksheet". *In re Marriage of Simpson*, 57 Wn. App. 677, 681, 790 P.2d 177 (1990).

The State filed child support worksheets with the findings of fact and conclusions of law and the judgment and order of paternity. The worksheets set forth Edwards's and Woods's gross monthly income and then calculate a net monthly income figure. The remainder of the worksheet addresses particular expenses and assets of the parents. Dashes are drawn through these sections.

Woods fails to specify any particular item overlooked by the court; he simply cites *In re Marriage of Sacco*, 114 Wn.2d 1, 784 P.2d 1266 (1990), for the proposition that the trial court must complete all entries including insurance premiums

paid, transportation costs, and financial circumstances of each household. In *Sacco*, the trial court did not fill out a worksheet to show its child support calculations, did not follow the standard support schedule, and did not set forth reasons for its deviation from the standard calculation. *Sacco*, at 5.

In contrast, the trial court here filed its worksheet showing the parties' gross income and net income, and the calculations by which it derived the net income. It also followed the standard support schedule. Although the worksheet seeks information regarding the child's health insurance and long distance transportation expenses, it does not seek similar information about the parents' personal expenses. The trial court found that Edwards has no child care costs and Woods does not claim that he made insurance or transportation expenditures for the child. Nor does Woods state that he had other expenses that he wanted included to reduce his net support obligation, or that he had information that Edwards had relevant assets. Woods has failed to show that the worksheets were either incomplete or inaccurate.

The support order mirrors the standard calculation and the figures entered in the completed child support worksheets. Under the circumstances here, the trial court's placement of a dash before an inapplicable item did not cause the worksheet to be incomplete. Woods's contentions regarding current child support lack merit.

### Back Child Support

Woods argues that the trial court erred in ordering him to pay back child support because neither the State nor Edwards requested back child support in their pleadings. The State argues that the issue of back support was tried with the express or implied consent of the parties and, therefore, pursuant to CR 15(b), the pleadings should be treated as amended to conform to the evidence.

On this issue, our review again is hampered by the limited record. We cannot evaluate the State's assertion when we have no record to review. Because we remand this matter

for trial due to the absence of a record, it would serve no purpose at this time to engage in an analysis of the factors related to CR 15 amendments.

## Attorney Fees

We deny Woods's request for attorney fees because of his failure to support his request with any applicable law or legal theory. RAP 18.1(b) requires that a party asking for attorney fees "devote a section of the brief to the request for the fees or expenses".

## CONCLUSION

The trial court erred in its determination of paternity and in its award of child support. The trial court did not err in calculating current child support. Accordingly we reverse in part, affirm in part, and remand to the trial court for a new trial on the issues of paternity and past child support.

MORGAN, C.J., and HOUGHTON, J., concur.

Reconsideration denied February 11, 1994.