922 P.2d 206 (1996)
83 Wash.App. 613
In re the Matter of J.R.H., Minor.
Jeanne M. Horton, Respondent, and
Brian K. Wutzke, Appellant.
No. 36415-4-I.
Court of Appeals of Washington, Division 1.
September 16, 1996.
Sally Marshall Hyde, Edmonds, for Appellant.
*207 Ximena O. West, Hopkins, Jelsing & Tri, Everett, for Respondent.
COX, Judge.
Brian Wutzke appeals the trial court's order holding him in contempt for failing to comply with the residential provisions of a parenting plan. Because the trial court failed to give Wutzke the opportunity to testify at the contempt hearing as permitted under applicable local court rules, we reverse and remand.
Jean Horton and Brian Wutzke are the parents of J.H., a child with special needs. J.H. was born in October 1989 and has Down's Syndrome.
Horton and Wutzke were never married and do not reside together. In July 1990, the Snohomish County Superior Court entered an Agreed Order of Paternity, Child Custody, Support and Visitation upon Horton's petition for determination of parentage. The order designated Horton as the custodial parent and also set forth a parenting plan that provided: "The child shall reside with the mother except, alternating weekends and holidays, and 1 night a week with the father."
In August 1994, Horton sought an order of contempt against Wutzke for allegedly violating the residential provisions of the July 1990 agreed order. Essentially, Horton claimed that Wutzke failed to comply with his responsibilities by often canceling plans at the last minute and either leaving her to care for J.H. or requiring her to enlist the services of a day care provider for J.H.'s care.
A court commissioner held a contempt hearing, found no violation of the paternity order, and denied Horton's request to hold Wutzke in contempt. But the commissioner also "clarified" the terms of the paternity order, making Wutzke's residential time mandatory and setting forth specifics regarding each parent's responsibilities. That order was entered on August 29, 1994.
Wutzke moved for reconsideration of the order. He argued that the court lacked authority to require him to exercise his visitation rights, to impose specific visitation times to which he did not agree, and to require him to use a specific day care provider or pay for full expenses of work-related day care. The commissioner denied the motion. Wutzke then moved to revise the commissioner's order. A superior court judge substantially denied the motion with minor exceptions. Wutzke did not appeal this order.
In February 1995, Horton sought an order of contempt against Wutzke for allegedly violating the visitation provisions of the August 1994 order. She also moved for further clarification of the order. Wutzke filed a response (including a request to call witnesses at the contempt hearing) and supporting affidavits.
The court held a hearing but denied Wutzke's request to call and examine witnesses. The court then entered an order on March 14, 1995, holding Wutzke in contempt of the visitation provisions of the August 1994 order. In the same order, the court "clarified" the August 1994 order.
Wutzke appeals.

I

Scope of Review
We must first determine what is properly before us for review. In his notice of appeal, Wutzke designates the March 14, 1995, order and the August 29, 1994, order upon which the former order was based. In his assignments of error and argument, he likewise challenges both orders.
The March 1995 order is the only order properly before us. The order held Wutzke in contempt and also "clarified" the August 1994 order. Wutzke filed a timely notice of appeal of this order. But we limit our review to the contempt portion of the order. We do not address the "clarification" portions of the order because Wutzke does not argue them in his brief.[1]
We also decline to review the validity of the underlying August 1994 order, which "clarifies" provisions of the July 1990 order. The August 1994 order was reviewed and modified by the superior court's order on revision. By failing to file a notice of appeal within 30 days of entry of either of these *208 orders, Wutzke waived his right to challenge the provisions to which he now objects.[2]
Wutzke claims the commissioner's order is subject to collateral attack. We disagree.
According to Washington's "collateral bar" rule, "a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid."[3] While there is an exception to the rule when the underlying order was entered without jurisdiction,[4] that is not the case here. Despite Wutzke's claims to the contrary, the court commissioner had jurisdiction to modify the parenting plan.
In Mead, our state Supreme Court described the process for determining whether a court has "jurisdiction" for purposes of the collateral bar rule:
The "jurisdiction" test measures whether a court, in issuing an order or holding in contempt those who defy it, was performing the sort of function for which judicial power was vested in it. If, but only if, it was not, its process is not entitled to the respect due that of a lawful judicial body. "Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may [its order] be disobeyed...."[[5]]
Article 4, section 23 of our state constitution grants commissioners the "authority to perform like duties as a judge of the superior court."[6] In Henderson, the court reasoned that at the time of the adoption of the state's constitution, judges who were equivalent to what are now superior court judges had the power to hear and determine all matters not requiring a jury trial.[7] Proceedings under the Uniform Parentage Act[8] are tried without a jury. Thus, the court held that a commissioner acted within his constitutional authority in presiding over a contested paternity action.[9]
Here, the commissioner properly presided over the contempt proceedings arising from an order issued under the Uniform Parentage Act. The court commissioner did not lack jurisdiction to enter the order. We therefore decline to engage in collateral review of the validity of the commissioner's contempt order.

II

Contempt Order
We now turn to the contempt order dated March 14, 1995. Wutzke contends that the trial court erred by refusing to permit him to present and cross-examine witnesses during the contempt proceeding against him. We agree.
A provision of the Snohomish County Superior Court Local Rules requires that the accused in a contempt proceeding be permitted to give testimony at a show cause hearing. Specifically, SCLSPR 94.04(e)(6) provides:

All show cause hearings, except for contempt, domestic violence, and anti-harassment hearings, shall be by affidavit only. In contempt matters the accused shall be given the opportunity to give testimony. In anti-harassment and domestic violence actions only the parties may testify without cross examination, or make statements as allowed by the court.[[10]]
In response to the court's order to show cause, Wutzke filed a declaration and brief in opposition. The brief stated, in part:

*209 In the event that the court, after reading Mr. Wutzke's declaration, does not feel that it is entirely clear that Mr. Wutzke should not be held in contempt of court, Mr. Wutzke requests a full hearing on this issue with the opportunity to present witnessed [sic] on his behalf and the right to cross examination.
The minute entry for the date of the show cause hearing states, in part: "Respondent requests an opportunity to present witnesses: Denied. The court will take an offer of proof." There is no indication in the record before us whether an offer of proof was made. The same minute entry also reflects that both Horton and Wutzke were present at the hearing with their respective counsel. It does not indicate whether other possible witnesses were present.
In its final order, the court noted: "The father requested an extended hearing with the opportunity to present and cross examine witnesses. This request was denied."
We conclude from our reading of the record before us that Wutzke made a request to testify at the contempt hearing. It is true that his request is couched in terms of presenting witnesses on his behalf and that the local rule only gives the accused the right to testify. But Wutzke's request, coupled with his presence at the contempt hearing, makes it clear to us that he intended to testify. He had a right to do so.
Horton concedes in her brief that Wutzke had the right to testify at the contempt hearing. But she argues that his testimony would have been simply repetitive of his declaration. We disagree.
While some of his testimony might have been repetitive of the declaration, Wutzke might have also either clarified or expanded upon portions of it or testified to entirely new matters related to the contempt allegations. We have no way of knowing because he was denied the opportunity to testify.
Contempt is a very serious matter. The rules governing its imposition must be followed. We hold that although Wutzke had no right to present live witnesses other than himself at the hearing, the court erred by denying him the right to testify at the contempt hearing. We therefore reverse the contempt order and remand for such further proceedings as are proper.

III

Attorney Fees
Horton seeks fees on appeal based on RCW 26.09.160.[11] An award of fees and costs under this provision is conditioned on a finding of contempt. Because we reverse the contempt order, the necessary predicate to the award of fees does not exist. We deny the request for fees on appeal.
Because we remand, we need not reach the substantive merits of the order of contempt. But this matter is likely to be before the trial court again. We take this opportunity to provide some guidance to the parties and the court on certain issues that are likely to recur.
First, we note that Wutzke may be subject to contempt sanctions for failing to exercise what he calls "visitation privileges." Our Parentage Act no longer uses the terms "visitation" and "custody" to which Wutzke refers. Rather, the act establishes "a type of joint custody in which each parent is responsible for performing parental duties during his or her residential time with the child."[12] Thus, "[o]nce the court has ruled, either in the parenting plan or in a subsequent order, that spending time with a parent is in the best interests of the child, that parent is expected to care for the child during the time the plan gives him or her custody."[13] A parent may therefore be held in contempt for failure to spend the time with the child specified by the parenting plan, provided the *210 court has made an explicit finding that the parent acted in bad faith.[14]
Second, the record before us lacks any findings that the disputed provisions of the August 1994 and March 1995 orders are in the best interests of the child.[15] When questioned at oral argument about findings in support of the August 1994 order, Horton referred only to the commissioner's letter in response to Wutzke's motion for reconsideration. That letter states:
I did not find contempt due to the ambiguities and the agreements. However, it is not in a child's best interests to have parents who are involved in conflict. These parents were unsuccessful in mediating their differences. I found, and continue to find, that it was appropriate to provide greater certainly [sic] as to the parenting.
The mother's motion was prompted by her exhaustion at meeting the needs of this special needs child, day after day, with little relief from the father. The father, in failing to meet his obligations due to his voluntary work decisions, was not meeting his legal obligations. This unfair situation needed to be remedied by forcing the father to either comply with his responsibilities, or insure that they were being met by a paid respite care worker. This decision was correct.
While the court's letter makes passing reference to the "child's best interests," it is clear that the court's concerns were focused on the best interests of the mother, not the child. Such reference is insufficient to constitute the required findings.
We recognize that this court approved of orders mandating parents to exercise residential time with their children In re Marriage of James.[16] But we caution that such orders will stand only when supported by explicit findings that the orders are in the child's best interests.
We reverse the order of contempt and remand for such further proceedings as are proper.
GROSSE and ELLINGTON, JJ., concur.
NOTES
[1] See RAP 10.3(a)(5); Pappas v. Hershberger, 85 Wash.2d 152, 530 P.2d 642 (1975) (assignments of error not argued in brief are deemed abandoned).
[2] See RAP 5.2(a); RAP 18.9(b), (c); Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wash.2d 366, 367-68, 849 P.2d 1225 (1993).
[3] State v. Coe, 101 Wash.2d 364, 369-70, 679 P.2d 353 (1984).
[4] Coe, 101 Wash.2d at 370, 679 P.2d 353 (citing Mead School Dist. 354 v. Mead Educ. Ass'n, 85 Wash.2d 278, 280, 534 P.2d 561 (1975)).
[5] Mead, 85 Wash.2d at 282, 534 P.2d 561.
[6] State ex rel. Henderson v. Woods, 72 Wash.App. 544, 548, 865 P.2d 33 (1994).
[7] 72 Wash.App. at 548-49, 865 P.2d 33.
[8] RCW 26.26.
[9] 72 Wash.App. at 549, 865 P.2d 33.
[10] (Italics ours.)
[11] RCW 26.09.160(2)(b) provides, in part: "Upon a finding of contempt, the court shall order:

"...
"(ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance...."
[12] In re Marriage of James, 79 Wash.App. 436, 444, 903 P.2d 470 (1995).
[13] James, 79 Wash.App. at 444-45, 903 P.2d 470.
[14] James, 79 Wash.App. at 443, 903 P.2d 470.
[15] RCW 26.26.130(3) provides in part:

"The judgment and order shall contain other appropriate provisions directed to the appropriate parties to the proceeding, concerning the duty of current and future support, the extent of any liability for past support furnished to the child if that issue is before the court, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child." (Italics ours).
[16] 79 Wash.App. at 443-45, 903 P.2d 470.