Froessel, J.
Olava K. Olsen, hereinafter called “ Olava ”, and Harry M. Olsen, hereinafter called “ Harry ”, were married on March 10, 1917. This was the second marriage for each of them. Olava had two children by her first marriage, Martha, and George who died on August 20, 1942. Harry had three children by his first marriage, Sigurd, Henry and Alfred, all of whom are living'.
On October 7,1942, Olava and Harry simultaneously execul ed mutual wills hefor the same witnesses. They each devised to the other their respective residuary estates; in the event (a) of one predeceasing the other or (b) the occurrence of death of both under circumstances that it cannot he determined who was the survivor, each left his or her residuary estate, in equal shares, to Olava’s daughter, Martha, and Harry’s sons, Sigurd, Henry and Alfred, and their issue, per stirpes, if any died before the testator leaving issue surviving said testator. If any of the distributees died before the testator leaving no issue, then it was provided that the residuary estate should .be divided in equal shares among the survivors and the issue, per *1048 stirpes, o£ any who shall die before the testator leaving issue surviving him or her. Olava nominated Harry as executor, he nominated Olava and Sigurd; and if the other spouse predeceased the testator, Martha Olsen and Sigurd Olsen- were to be the executors thereof, without bond.
Paragraph VI of said wills provided identically ■ as follows, excepting in the change of their names and the related personal pronouns: “ At the time of the execution of this Will my said wife Olava Kristine Olsen is executing her last Will and Testament, with provisions corresponding to the provisions hereof, we having agreed that our property shall be disposed of as in this Will and hers provided.” (Italics mine.)
Olava died on July 3, 1943, Harry survived her, had her foregoing will probated, with knowledge of its provisions, and letters testamentary were duly issued to him on August 6, 1943, by the Surrogate of Queens County. He took possession of Olava’s residuary estate as provided under the terms of the will. On March 8, 1944, he married again and, about a month later, on April 11, 1944, made a new will in which", he bequeathed $10,000 of United States Government bonds to his three sons above named, and the balance of his property to his new wife. 'He died on April 7, 1946, and his will, dated April 11, 1944, was duly probated and letters testamentary issued by the Surrogate of Suffolk County on April 20, 1946, to his third wife, the defendant herein, as executrix. Olava’s surviving daughter, Martha, who was to share equally with Harry’s sons in the residuary estate under the terms of the mutual wills, was left nothing by the will which was probated upon Harry’s death. She thereupon has instituted this action to impress a trust on “ one-quarter of the property of said Harry M. Olsen and Olava Kristine Olsen, whether, prior to the death of said Harry M. Olsen, held in the name of said Harry M. Olsen, the joint names of said Harry M. Olsen and the defendant, or the name of the defendant, or in any other form ”, and for other appropriate relief. The facts are virtually undisputed.
It is the contention of the plaintiff that the mutual wills above described constituted an agreement which may be enforced by the" plaintiff as a beneficiary, to the extent demanded in her complaint. The defendant, on the other hand, urges (1) that said mutua] wills fall short of establishing an agreement; (2) that the alleged agreement is contrary to the Statute of Frauds; and (3) that should the plaintiff succeed in establishing the alleged agreement, (a) it would not affect bank accounts or Government bonds held in the joint names of Olava and Harry at the time of the making of the mutual wills, nor the *1049 account in Olava’s name in trust for her, since Harry would receive these irrespective of any will, (b) nor to assets which alter the death of Olava, Harry disposed of, and which existed at the time of the mating of the mutual wills, but would affect only such other property which Harry owned in his name at the time of his death and which was subject to testamentary disposition.
The essential question which must first be determined is whether the execution of the aforesaid mutual wills evidences an agreement as to the disposition of the property of Olava and Harry, for the breach of which a beneficiary thereunder has a cause of action such as has here been asserted by the plaintiff. I can reach no other conclusion but that such an agreement has been established. This is not a case of mere reciprocal wills, ambulatory in nature. Here, the testators had lived together as husband and wife for over a quarter of a century and down to the day of her death. They had a common interest in the distributees. Each testator knew what the other was doing. Their wills were made at the same time, and executed simultaneously, after due consultation with Harry’s attorney. Harry ‘ ‘ wanted to give everything to his wife, Olava Olsen, but wanted to make sure * * <s that if he died first she could not cut out his sons and that her daughter was to get an equal share with the sons.” Drafts were prepared and approved and the wills were thereupon prepared in accordance therewith.
In the light of these facts, the language of paragraph VI of each will can have but one interpretation. Each spouse acknowledges in writing, in the presence of three witnesses and the other spouse, that ‘ ‘ At the time of the execution ’ ’ of the will of each, the other “ is executing his (her) last Will and Testament with provisions corresponding to the provisions hereof.” Continuing the same sentence, they respectively add “ we having agreed that our property shall be disposed of as in this will and his (hers) provided.” ' To me this is unmistakable evidence of as binding an agreement as can be made. The language is “ clear and convincing ” (Wallace v. Wallace, 216 N. Y. 28, 39), and it is obvious “ * * * that the minds of the parties met on the precise terms of the agreement under which the mutual wills were executed.” (Lolly v. Cronen, 247 N. Y. 58, 62.) To ignore such provisions and permit the surviving spouse to unbind himself from such an agreement unilaterally, and without any prior notice, would be nothing more than a mockery of justice.
*1050 In Hermann v. Ludwig (186 App. Div. 287, affd. 229 N. Y. 544) the late Presiding Justice of the Appellate Division, Second Department, Mr. Justice Kelly, cited the following language by Lord Camden in Dufour v. Pereira (1 Dick, 419, 420; 2 Hargrave’s Jurid. Arg. 277, 304, 307-308):
“ A mutual will is a mutual agreement. * * * The mutual will'is in the whole and every part mutually upon condition, that the whole shall be the will.— There is a reciprocity, that runs throughout the instrument. The property of both is put into a common fund, and every devise is the joint devise of both. This is a contract. If not revoked during the joint lives by any open act, he that dies first dies with the promise of the survivor, that the joint will shall stand. It is too late afterwards for the survivor to change his mind; because the first dier’s will is then irrevocable, which would otherwise have been differently framed, if that testator had been apprized of this dissent. Thus is the first testator drawn in and seduced by the fraud of the other, to make a disposition in his favor, which but for such a false promise he would never have consented to.” (2 Hargrave’s Jurid. Arg. 307-308.) “ It [the will] might have been revoked by both jointly; it might have been revoked separately, provided the party intending it, had given notice to the other of such revocation. But I cannot be of opinion, that either of them, could, during their joint lives, do it secretly, or that after the death of either, it could be done by the survivor by another will.” (1 Dick. 419, 420.)
While the will in that case was a joint will, though called mutual, I see- no distinction. Paraphrasing the language of Lord Camden in Dufour v. Pereira (supra) there was reciprocity that ran throughout these mutual wills. The property of both was put into a common fund, and every bequest was the joint bequest of both. Since it was not revoked during the joint lives of both, Clava, dying first, died with the promise of Harry, who survived her, that his will should stand. It was too late after-wards for him to change his mind because the first “ dier’s ” will was then irrevocable. Again quoting from Lord Camden : “ The instrument itself is the evidence of the agreement; and he, that dies first, does by his death carry the agreement on his part into execution. If the other then refuses, he is guilty of a fraud, can never unbind himself, and becomes a trustee of course. For no man shall deceive another to his prejudice. By engaging to do something that is in his power, he is made a trustee for the performance,- and transmits that trust to those that claim under him.” (2 Hargrave’s Jurid. Arg. 310.)
*1051 It is the agreement that constitutes the compact, and where such an agreement is found, it is immaterial whether the will be in one or two instruments. Moreover, whether the agreement be in a separate document or embodied in the wills themselves is of no consequence. Here the agreement is in the wills themselves. In Morgan v. Sanborn (225 N. Y. 454), we have a case of mutual wills. There the court, writing of an agreement of the kind here involved, said (p. 462): “ If it is contained in mutual or joint wills later revoked by. the survivor, those wills may be carried out, not as wills but as contracts. (Rastetter v. Hoenninger, 214 N. Y. 66.) ” (Italics mine.) (See, also, Allen v. Payson, 170 Misc. 759; Levenson v. Levenson, 229 App. Div. 402.)
In the case of a joint will, where the agreement was found in a separate instrument and the surrounding circumstances, this court recently (Tutunjian v. Vetzigian, 64 N. Y. S. 2d 140), had occasion to discuss numerous authorities on the subject of joint and mutual wills, some "of which are relied on by defendant’s counsel, including Edson v. Parsons (155 N. Y. 555), and I, therefore, deem it unnecessary to review these authorities again here.
As for the claim of the Statute of Frauds, there is no substance whatever thereto. In the first place, the defendant has waived it by failure to plead it (Matthews v. Matthews, 154 N. Y. 288). In the second place, an agreement “ to bequeath property or make a testamentary provision of any kind ” is enforcible under the provisions of section 31 of the Personal Property Law if 11 some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith * 55 s The agreement in the case at bar is in writing. It was Harry’s executed will and though the original was not produced, its terms could be established by secondary evidence (Posner v. Rosenbaum, 240 App. Div. 543; Cooke v. Burlingham, 105 Misc. 675). The quality of that secondary evidence in this case could not be impeached.
Having found that Harry contractually bound himself by his will dated October 7, 1942, the contract is enforcible in equity. (Morgan v. Sanborn, 225 N. Y. 454, supra.) The identical moneys in this instance can be traced and equity will impress a trust upon them (Matter of Hicks, 170 N. Y. 195). As was said in Rastetter v. Hoenninger (214 N. Y. 66, 74, supra): “ Of .course, the agreement had to be carried out honestly and in good faith. The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agree *1052 ment. Upon the death of the wife, the husband undoubtedly became trustee of her personal estate for the remaindermen. And if the identical money received from her can be traced * * * equity will impress a trust upon it.”
It may be observed that all property held by Olava, by Harry, by them jointly, or by either in trust for the other, was embraced in the agreement, for the parties provided therein for the disposition of ‘1 our property.’ ’ This term would include the property of either as well as the property which they held together. We do not here have the situation presented in Levenson v. Levenson (supra) where the severance of a tenancy by the entirety was sought to be effected by the unilateral last will of one of the spouses alone prior to the death of the other spouse. Of course when Olava died Harry acquired the joint property for himself, bound, however, by the terms of their common agreement. Moreover, while Harry had the right to use as much of the assets of their joint estates during his lifetime .as he required, he did not have the right to “ make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement.” (Rastetter v. Hoenninger, supra, p. 74.) In this case, the evidence shows that the defendant admitted that she never had possession of the passbooks for the accounts in the Dime and Williamsburgh Savings Banks and the Bank of the Manhattan Company prior to Harry’s death, and that “ he retained control of all these assets.” The agreement,, therefore, embraced the property which Harry sought to dispose of to his third wife, the defendant herein. It may be noted that the defense raising the foregoing issues was stricken from the answer for legal insufficiency on consent, by an order of this court entered August 16, 1946.
As to the assets themselves, I find that the proceeds from the sale of Olava’s real estate and several small bank balances cannot be traced, but that $47,969.63 can be traced to the defendant. The plaintiff is entitled to judgment impressing a trust in the sum of one quarter of this amount upon Harry’s assets which I find made their way into the defendant’s possession, to wit, $11,992.41, with interest from Harry’s death on April 7, 1946, at the rate as calculated by plaintiff on page 10 of her brief, less one quarter of the reasonable costs of administration of the estate,, which plaintiff claims should not exceed $3,500, and which amount I find is fair and reasonable.
The several motions to dismiss made by the defendant at the close of the trial are denied, as is her motion for judgment, with appropriate exceptions to her.
Settle judgment on notice.