[No. 2897–3.   Division Three.   July 19, 1979.]

DALLAS S. NEWELL, *Respondent*, v. ELIZABETH C. AYERS, ET AL, *Appellants*.

768

*Lowell D. Sperline, Sperline & Sperline, Stephen R. Crossland,* and *Anderson, McCauley & Crossland,* for appellants.

*Peter G. Young,* for respondent.

GREEN, C.J.—Plaintiff, as the personal representative of Homer Duncanson's estate, sued the defendants to recover gifts of money made to them by the decedent shortly before his death. He alleged three theories of recovery: (1) the inter vivos gifts were testamentary in nature, and the decedent intended thereby to circumvent the terms of a mutual will; (2) the decedent made the gifts as the result of the undue influence of the defendant, Elizabeth Ayers; and (3) the decedent was mentally incompetent to make the transfer. The trial court found in favor of the plaintiff on all three theories and entered separate judgments against each of the defendants for the amount of each gift. This appeal followed.

We reach only two issues: (1) Did the trial court err in finding a mutual will? and (2) Did the court err in refusing to set aside the judgments because the minor defendants were not represented by a guardian ad litem? We affirm.

Homer and Bessie Duncanson were married in 1936, at which time she had four children and he had one child by their prior marriages. No children were born of their marriage. In 1952, Mrs. Duncanson was scheduled to undergo major surgery. Anticipating the possibility that she might not survive that surgery, the Duncansons executed identical wills. Those wills provided that the couple's property would pass to the survivor, and the survivor agreed to devise the property owned at death to the couple's children in equal shares. The will of the decedent contained the following specific language:

And by agreement with my wife, Bessie Duncanson, who is making a like will, mutually agreed to, in the event my wife predeceases me, I give, devise and bequeath . . .

Mrs. Duncanson died following the surgery. Mr. Duncanson survived her by 23 years.

In 1974, the decedent was in poor health. At this same time, he began liquidating his property, telling his banker he was dissatisfied with his will and that he wanted his money where he could get his hands on it. In June 1974, he gave $18,000 each to his natural daughter, Elizabeth Ayers, and her husband Harold. Smaller gifts were made to Elizabeth's children and to her grandchildren, who were minors. Then, in September, the decedent made an additional gift of $10,000 each to Mr. and Mrs. Ayers. These monetary transfers represented approximately 90 percent of the decedent's property. The remainder of the property which was liquidated was under the control of Mrs. Ayers who was using it for the decedent's care. He lived less than a year after the final transfer.

Mrs. Ayers, who was named as executrix by a 1974 codicil to the will, did not file probate proceedings. Thereupon, the plaintiff, husband of one of Bessie's children, applied for letters testamentary, and initiated this action against the recipients of the gifts.

■■ First, defendants contend that the 1952 will executed by the decedent was not a mutual will. We disagree with the defendants' contention. A review of the Washington case law in this area reveals that a mutual will is a will that is executed pursuant to an agreement between two individuals as to the manner of the ultimate disposition of their property after *both* are deceased. The agreement and the will may be combined in one document. Once the survivor elects to take under the provisions of such a will, he is not free to avoid the obligation to dispose of his property as previously agreed. The existence of the parties' contractual intention is a question for the trier of fact who must be persuaded to a high probability that the parties entered into such an agreement. *Auger v. Shideler*, 23

Wn.2d 505, 161 P.2d 200 (1945); *Arnold v. Beckman,* 74 Wn.2d 836, 447 P.2d 184 (1968); *In re Estate of Richardson,* 11 Wn. App. 758, 760–62, 525 P.2d 816 (1974).

Here, the agreement is unambiguously expressed in the will.[1] That the decedent understood the binding nature of his will is evidenced by the fact he obtained legal advice as to whether he could change the will and as a result of the advice never attempted to revoke it. Instead, he sought to avoid its effect by disposing of virtually all of his property before his death in a manner contrary to his agreement with his late wife. This disposition took place at a time when he was aged, in very poor health and anticipating his death. The defendants have not contradicted this evidence except to allege that the Duncansons could not have intended that their wills be mutual because such an intent would have resulted in an unnatural disposition of the decedent's property, *i.e.,* his natural daughter would inherit only one–fifth of his estate. This argument ignores the fact that the couple's property was presumptively community and in any event could be disposed of by agreement. Consequently, we hold that the trial court's finding that the will of the decedent was a mutual will is supported by the required degree of evidence. Since the evidence also discloses that the decedent's inter vivos transfers were in effect testamentary dispositions contrary to the disposition called for by the agreement, those transfers were void and were properly set aside. *Olsen v. Olsen,* 189 Misc. 1046, 70 N.Y.S.2d 838 (1947). In view of our holding we need not reach the issues raised with respect to undue influence and incompetency.

---

[1]We note that the language here clearly expresses the fact that the parties are acting pursuant to a contract unlike the language found in the wills in some previous cases. For example, in *In re Estate of Richardson, supra* at 759, the will simply stated that the testator and testatrix were "relying on the conditions herein made by each of them as the basis for the conditions made by the other . . ." In both *Arnold v. Beckman, supra,* and *Auger v. Shideler, supra,* the contract was oral and was not referred to at all in the will itself.

■ Second, the defendants point out that James and Kathryn Badgley, and Bradford and Brock Boswell are minors, but that the judgment entered against them was without the benefit of a guardian ad litem.[2] They cite RCW 4.08.050:

When an infant is a party he shall appear by guardian, or if he has no guardian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act. Said guardian shall be appointed as follows:

. . .

(2) When the infant is defendant, upon the application of the infant, if he be of the age of fourteen years, and applies within thirty days after the service of the summons; if he be under the age of fourteen, or neglects to apply, then upon the application of any other party to the action, or of a relative or friend of the infant.

The defendants assert that the statute is jurisdictional, and, since it was not complied with, all of the judgments are void. We disagree. While the appointment of a guardian ad litem is mandatory, *Mezere v. Flory,* 26 Wn.2d 274, 278, 173 P.2d 776 (1946), citing *Ball v. Clothier,* 34 Wash. 299, 75 P. 1099 (1904); *State ex rel. Davies v. Superior Court,* 102 Wash. 395, 173 P. 189 (1918), we do not find it to be jurisdictional. Rather, the rule is that a minor must be represented by a guardian ad litem, or the judgment against him may be voidable at his option. Whether the minor will be allowed to avoid the judgment or whether the judgment is allowed to stand depends upon whether the court finds that his interests were protected to the same extent as if a guardian ad litem had been appointed at the time the action was instituted. *Zielinski v. Pleason,* 299 Ill. App. 594, 20 N.E.2d 620 (1939); *Hamilton v. Moore,* 6 A.2d 787

---

[2]We note that the minor defendants are still not represented by a guardian ad litem, a fact which may raise questions concerning the remaining defendants' standing to assert to minors' interests. However, we also note that the appellate courts will act sua sponte to safeguard the interests of a ward. *Shelley v. Elfstrom,* 13 Wn. App. 887, 889, 538 P.2d 149 (1975). We see no reason to act differently with respect to a minor. Thus, we consider the defendants' assignment of error.

(Pa. 1939); *Goodall v. Doss,* 312 S.W.2d 875 (Tenn. Ct. App. 1958); and *Tart v. Register,* 257 N.C. 161, 125 S.E.2d 754, 760–61 (1962).

Here, the failure to appoint a guardian is a technical error which did not affect the result of the trial. The record reveals that all of the defendants had a common interest and that the defendants were competently represented by counsel. Moreover, at least one of the parents of each minor was a party defendant. In these circumstances, the minor defendants should not be allowed to avoid the judgment.

Accordingly, we affirm the judgment in all respects; however, the trial court is directed to appoint a guardian ad litem to represent the minor defendants in the process of the plaintiff's collection of the judgment.

MUNSON and MCINTURFF, JJ., concur.

Reconsideration denied August 20, 1979.

Review denied by Supreme Court November 9, 1979.