[Nos. 39891-1-I; 39892-0-I.   Division One.   October 20, 1997.]

*In the Matter of the Dependency of* O.J., ET AL.

GWENDOLYN MAY, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Eric Broman* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Delores Peterson, Assistant,* for respondent.

AGID, J. — Gwendolyn May appeals the superior court's order terminating her parental relationship with her children O.J. and K.J. on the grounds no guardian ad litem was appointed to represent the children and the trial court violated the appearance of fairness doctrine. While a guardian ad litem should have been appointed, the failure to do so is not a jurisdictional defect requiring reversal.

We also conclude that the court did not violate the appearance of fairness doctrine, and affirm.

## FACTS

Gwendolyn May is the 38-year-old mother of two boys, O.J. and K.J., born in October 1986 and July 1988. O.J. was placed in protective custody in December 1993 after his teachers observed signs of physical abuse which he confirmed. The shelter care order issued at that time directed that a guardian ad litem be appointed to represent O.J. The parties agree that none was ever appointed. O.J. was found dependent by agreed order on March 3, 1994. K.J. remained at home.

Based on May's agreement not to hit O.J. again and to participate in counseling, parenting classes, and home based services, O.J. was returned to her care two months later. But after O.J. returned to May's home, the boys' behavior at school deteriorated and they became increasingly aggressive and disruptive. O.J. and K.J. also wore the same clothes every day, appeared tired, and reported that their sister was hitting them. In September 1994, after May admitted that she had a cocaine problem and that the boys were lying, breaking into homes, and stealing, they were placed in foster care. K.J. was also found dependent at that time and, in November 1994, a guardian ad litem was appointed to represent him. In May 1995, the court approved the guardian's request to withdraw and ordered the program to review the need for appointment of a substitute guardian and to report its conclusions. The record does not reflect that a report was ever made.

On June 5, 1996, the State filed a petition to terminate May's parental rights to K.J., together with a notice of preliminary hearing to be held on August 23, 1996. The notice identified the issues to be decided as appointment of a guardian ad litem for K.J. and whether a default order should be entered if the parents failed to appear. On

August 1, 1996, the State filed a petition to terminate May's parental rights to O.J. A second notice of preliminary hearing filed at the same time also identified as an issue appointing a guardian ad litem for O.J. The order issued at the conclusion of the hearing makes no reference to appointing a guardian ad litem for either boy. It simply states that the court has jurisdiction over the mother, who appeared through counsel, and sets the matter over for trial on October 21.

■ At the conclusion of the fact-finding hearing, the court terminated May's parental rights to both O.J. and K.J. based in part on the court's finding that her use of cocaine made her incapable of providing proper care for the children for extended periods of time. The court observed that her most recent effort to deal with her addiction problem appeared sincere since she had been sober for approximately 46 days at the time of the hearing. But it also observed that she had failed numerous prior attempts at treatment and there was no way to know whether her drug addition would be under control for at least one or two years. The court found that O.J. was making "phenomenal" progress in group care, K.J. was thriving in the foster home in which he had been placed and that any further delay would diminish and likely eliminate any chance of stability or permanency. May does not appeal these findings.[1] Rather, she argues that the trial court's failure to appoint a guardian ad litem for the chil-

---

[1]May makes two new assignments of error in her reply brief challenging the court's factual finding and conclusion of law that termination was in the best interests of the children. But issues raised for the first time in a reply brief will not be considered by the appellate court. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). To the extent they do not raise any new issues and are included simply to remedy a technical violation of the Rules of Appellate Procedure, we will consider them as amplifying the issues raised in May's opening brief on the merits. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). It would be unfair, however, to allow the appellant to use those delinquent assignments of error to raise any new issues not addressed in its opening brief because the respondent has had no opportunity to reply to them. *See Cowiche Canyon*, 118 Wn.2d at 809.

dren prior to terminating her parental rights requires us to reverse the termination order.

## DISCUSSION

### I. Appointment of Guardian ad Litem

■ Appointing a guardian ad litem is not among the requirements listed in RCW 13.34.180 and .190 as preconditions to entering a termination order. But RCW 13.34.100(1) provides:

> The court shall appoint a guardian ad litem for a child who is the subject of an action under this chapter, unless a court for good cause finds the appointment unnecessary. The requirement of a guardian ad litem may be deemed satisfied if the child is represented by independent counsel in the proceedings.

JuCR 9.2(b)(1) allows a court to appoint a lawyer for a juvenile who has no guardian ad litem:

> Upon request of a party or on the court's own initiative, the court shall appoint a lawyer for a juvenile who has no guardian ad litem . . . If the court has appointed a guardian ad litem for the juvenile, the court may, but need not, appoint a lawyer for the juvenile.

There is no question that the trial court should have appointed a guardian ad litem as required by RCW 13.34.100(1). A court's failure to comply with that requirement, however, is not a jurisdictional defect.[2] Although the judgment may be voidable at the option of a minor who contends that his interests were not protected to the same extent as if a guardian ad litem had been appointed, it is neither void nor subject to collateral attack.[3]

---

[2]*Newell v. Ayers*, 23 Wn. App. 767, 771, 598 P.2d 3, *review denied*, 92 Wn.2d 1036 (1979).

[3]*Freise v. Walker*, 27 Wn. App. 549, 553, 619 P.2d 366 (1980); *Newell*, 23 Wn. App. at 771. May's contention that *State ex rel. Henderson v. Woods*, 72 Wn. App. 544, 555, 865 P.2d 33 (1994), stands for the proposition that "[w]henever the trial court is required to appoint a guardian ad litem and fails to do so the

Both O.J. and K.J. had been in therapy for an extended period of time, and both their therapists testified that it was in the boys' best interest that their mother's parental relationship be terminated. This may well have supported a good cause finding that appointing a guardian ad litem was unnecessary.[4] Had there been such a finding, we would not have hesitated to affirm on that basis alone. But the written order issued at the conclusion of the preliminary hearing does not include either a finding that a guardian ad litem was unnecessary or an order that one be appointed. Because no transcript of that hearing has been included in the record on appeal, we are unable to determine if the question was raised and, if so, whether the court made such a finding orally during that hearing.[5] As counsel acknowledged during oral argument, the State should take responsibility to request such a finding and not simply overlook it.

In this case, however, May's trial attorney also did nothing to bring the matter to the court's attention in a timely manner. He simply signed the order issued at the conclusion of the preliminary hearing and did not raise this is-

---

case must be reversed and remanded for a new trial" is simply wrong. In *Woods*, the court held that "if the State fails to make the proper showing [that blood tests indicate with near certainty that Woods was Henderson's father], the trial court must assure that Henderson's due process interest [determining whether his father was someone else] is protected by the appointment of an appropriate guardian ad litem." 72 Wn. App. at 555 (citing *State v. Santos*, 104 Wn.2d 142, 150, 702 P.2d 1179, 70 A.L.R.4TH 1021 (1985)). In other words, if the State was able to make the necessary showing, appointment of a guardian ad litem would not be required.

[4]RCW 13.34.100(2) permits the court to appoint a "suitable person" to act as guardian ad litem for the child if it does not have available a guardian ad litem program with a sufficient number of volunteers, so long as another party to the proceeding or her employee or representative are not so appointed. RCW 13.34.030(6), which defines "guardian ad litem," provides that a court-appointed special advocate appointed to perform substantially the same duties and functions as a guardian ad litem shall be deemed to be a guardian ad litem for all purposes under RCW 13.34.

[5]*See State ex rel. Campbell v. Cook*, 86 Wn. App. 761, 769, 938 P.2d 345 (1997) (rejecting the appellant's claims that a guardian ad litem was never appointed in a paternity action under former RCW 74.20.310 on the ground that a complete record was not provided and that the court is not required to order supplementation of an incomplete record).

sue below until closing argument.[6] As counsel noted at that time, a guardian ad litem can bring a uniquely independent perspective to bear on the case. But by the time May's attorney reached the issue here, the court had heard extensive testimony over the course of the three-day termination hearing from various individuals who had been involved with the boys, including O.J.'s and K.J.'s teachers, therapists, and caseworkers, and K.J.'s foster mother. Indeed, that testimony is so strong that we are confident that a guardian ad litem would have reached the same conclusion as the therapists and the court.

■■ Had May drawn the court's attention to its failure to make a finding of good cause not to appoint a guardian ad litem and the court still failed to act or relied for its finding on something other than good cause, there might well be reversible error. But a party may not be delinquent in raising such an issue and expect to obtain relief.[7] This is especially true in dependency and termination cases where parties, attorneys and the court have an obligation to expedite resolution of the issues to limit the period during which children face an uncertain future.[8] It is thus especially important that the trial court be apprised promptly of alleged errors in a termination case so that it can make any necessary corrections and avoid both appeal and further proceedings.

The trial court's failure to appoint a guardian ad litem

---

[6]While May suggests that this was not true, the only instances in which the issue was raised prior to closing argument were those where the State noted the appointment of a guardian ad litem as an issue to be determined in the preliminary hearing. It is those notices that are at the pages of the clerk's papers to which May cites to suggest that she previously raised the issue. It is true that May elicited testimony from one of the witnesses that this is the sort of case where a guardian ad litem should be appointed, but May did not bring the issue itself to the court's attention until closing argument.

[7]*See In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995).

[8]*In re Dependency of A.W.*, 53 Wn. App. 22, 26, 765 P.2d 307 (1988) (for this reason, it is particularly appropriate to strictly apply the waiver provisions of CR 12(h)(1) in dependency and termination proceedings), *review denied*, 112 Wn.2d 1017 (1989).

was not reversible error under the circumstances of this case.

## II. Appearance of Fairness

May also argues that the trial court violated the appearance of fairness doctrine when it made certain comments to her and to State witnesses during the course of the proceedings.[9] Specifically, she contends that the judge's impartiality is open to question because he told her that he was concerned that returning O.J. and K.J. to her custody would be "handicapping" them. When the judge's comments are placed in context, however, his impartiality is clear. May had just finished explaining to the court that she understood that she had lost custody of her children because of her drug use. At that point, the judge made the comments of which she complains:

> You know, Ms. May, my concern as I listen to you — I absolutely believe in your heart of hearts you feel that you can turn your life around now; the question I have after all these years is these boys and their special needs, and you and your special needs — would I, if I returned these children to you, not be handicapping these children and preventing them from having some form of normal life.

> The concern I have is because both sides have such special needs; that's, of course, the issue — that's what I'm grappling with as I listen to you.

> I absolutely believe that you think you can now make treatment work for you this time.

These judge's comments do not demonstrate bias. Rather, they underscore his awareness of and sympathy for May's position as well as those of the boys in making his decision.

---

[9]*State v. Madry*, 8 Wn. App. 61, 68-69, 504 P.2d 1156 (1972), the Washington case to which May cites, was reformulated in *State v. Post*, 118 Wn.2d 596, 618-19, 826 P.2d 172, 837 P.2d 599 (1992), which now requires evidence of a judge's actual or potential bias to assert a claim under the appearance of fairness doctrine.

The judge's comment to K.J.'s foster mother, Claudia, was similarly benign. She testified that she had been a foster mother for 23 years and had had approximately 150 children in her home. After she indicated that she would be interested in adopting K.J. if he became available for adoption, the judge asked her if she had adopted any of her other foster children. When she responded that she had adopted seven, the following exchange took place:

THE COURT: Wow. Well you deserve some sort of a badge.

THE WITNESS: [F]ive of my kids now at home are adopted; I only have two foster kids.

THE COURT: Wow. Okay, well. There should be an award for people like you and that's wonderful.

The judge's appreciation of her efforts on behalf of children generally was not an expression of bias against May. Indeed, the judge paid May a compliment in very much the same terms. When the judge asked May to tell him more about her daughter who is a student at Howard University, he commented "[t]hat's absolutely wonderful" and stated "Howard University is a wonderful — one of the world's great universities, so that's great."

The court's comment to K.J.'s therapist, Sue Anderson, also did not show bias. After she stated "I'm an old nurse," the court simply said, "We wouldn't want to describe you that way." Again, the comment neither constitutes an expression of bias against May nor "demonstrates an affection for and allegiance to the State's witnesses," as May argues.

None of the comments of which May complains are in any way indicative of any bias against her. There was no violation of the appearance of fairness doctrine.

Affirmed.

COLEMAN and BECKER, JJ., concur.

Reconsideration denied November 21, 1997.

Review denied at 135 Wn.2d 1002 (1998).