968 P.2d 424 (1998)
93 Wash.App. 268
In re the DEPENDENCY OF: A.G., B.D. 11-01-82, a Minor.
STATE of Washington, Respondent,
v.
Allison GREY, Appellant (Two Cases).
In re the DEPENDENCY OF: T.G., B.D. 8-20-93, a Minor.
Nos. 41553-1-I, 41554-9-I.
Court of Appeals of Washington, Division 1.
December 14, 1998.
As Amended on Reconsideration February 1, 1999.
*425 James Dixon, Kathryn Russell, Seattle, for Appellant.
Mary F. Li, Asst. Atty. General, Seattle, for Respondent.
AGID, Acting Chief Judge.
In consolidated cases, A.G. and T.G.'s mother, Allison Grey (Grey), appeals the trial court's decision terminating her parental rights to her daughters. She claims the trial court must be reversed because she was not personally served with proper notice of the termination proceeding and the trial court *426 allowed her attorney to withdraw at the beginning of the termination hearing, both in violation of her right to due process. She also argues the termination is void because a guardian ad litem was not appointed for either of the children at any time during the proceedings. Despite our concern about the failure to appoint a guardian ad litem, we do not reverse on this record. Rather, we remand to the trial court to determine whether A.G. and T.G. were prejudiced by the absence of a guardian ad litem. We also impose sanctions because both the Department of Social and Health Services (DSHS) and the trial court failed to comply with the mandate of the guardian ad litem statute.

FACTS
T.G. was born in August of 1993 to parents Grey and Jeffrey Wertz. T.G. joined an older sister, A.G., who was nine years old at the time of T.G.'s birth. Grey and the baby tested positive for cocaine, so the children were placed with DSHS's Division of Child and Family Services (DCFS). Two days after T.G.'s birth, DCFS filed dependency petitions. The petitions were based on Grey's alleged drug abuse, abuse or neglect of her children, two prior Child Protective Service referrals on the family, and because there was no one capable to adequately care for the children. A.G. was placed with Grey's sister, Aunt J.,[1] and T.G. stayed with her mother who was placed in an inpatient program which accepted both mother and child.
Two months later, a trial court entered a default order of dependency as to the father and an agreed order of dependency as to Grey. The undisputed reasons relied upon in the agreed order were: (1) T.G.'s testing positive to cocaine at birth; (2) Grey's diagnosis of dependency on cocaine, marijuana, and sedatives; and (3) Grey's previous failure to complete treatment. The order did note that Grey entered and completed inpatient treatment after T.G.'s birth, and T.G. was placed with her for the time being.
For a period of over three months, the children remained with their Aunt J. and Grey. The order required Grey to comply with her substance abuse program's treatment recommendations and provide urine samples regularly. She was also told to keep DCFS apprised of her address and phone number at all times and visit with her older daughter. If Grey violated the order, the court told her T.G. could be placed with Aunt J. On January 7, 1994, the court entered an emergency placement order placing T.G. with her Aunt J. because Grey had relapsed into drug dependency.
For the next three years, there was a series of dependency review hearings. Grey made significant progress for about a year, but by January 1995 the court found little evidence of compliance with the conditions on which the children could be returned to her.
In July 1995, a review order again showed considerable progress, and A.G. and T.G. were returned to her custody.
Unfortunately, police officers had to take the children into protective custody a month later. The children were living in squalor with both Grey and Aunt J. A.G. said Grey had been sniffing "white powder," and there were allegations that Aunt J. was also using drugs. The police officers reported that Grey appeared to be on a controlled substance when they arrived at the home, and/or when an investigator made an unannounced visit. Grey and Aunt J. were evicted from their apartment, and warrants for their arrest issued. The State sought emergency placement with Grey's maternal aunt, Mary. At a dependency review two days later, the court found that Grey failed to comply with any of the requirements of previous orders but continued the payee to keep the rent and bills paid once Grey found suitable housing. After the children were placed with their great aunt and uncle, Grey stopped contacting DCFS. This pattern continued and during the next year the great aunt and uncle with whom the children were living said they wanted to adopt the girls.
At the next dependency review in January 1997, the court ordered Grey to comply with court-ordered services and responsibilities before it would even consider a reunion with *427 her daughters. The order reflected that DCFS would refer the case to the attorney general to file a petition for termination of parental rights. Despite drug-free visitation requirements the court had imposed earlier, Grey visited her daughters on occasion.
On March 26, 1997, the State filed petitions to terminate the parental rights of both Grey and Wertz. There was an additional review hearing. Grey's whereabouts were unknown, and the order reflected she was not interested in visiting her children. The court again ordered Grey to complete an intensive drug/alcohol program and added a requirement that she complete a parenting class. Grey appeared at a recovery center for an initial drug evaluation and was diagnosed with late-stage dependency on methamphetamine and marijuana, but she never returned to participate in the program. DCFS obtained Grey's phone number from the recovery center. When the caseworker called, Grey no longer lived there.
After filing the petition for termination of parental rights, the attorney general filed a notice and summons including the date, time, and place of the preliminary hearing and an advice of rights. The notice stated the preliminary hearing was set for August 2, 1997, but the actual hearing date was August 1. The notice also listed the time, place, and date of the September fact-finding hearing, and stated that if she failed to appear at the preliminary or the fact-finding hearing, Grey's parental rights could be terminated without further notice. Because no one could locate Grey, the State gave notice by publication, this time including the correct dates for both hearings. Grey was personally served on April 6 by leaving a copy of the notice and summons at Grey's last known address, the one she gave DSHS. Return of service noted that the documents were accepted by a co-resident of the house at that address. Grey asserts she was never personally served and never received the notice.
At the August 1 preliminary hearing, the court terminated Wertz's parental rights by default. Counsel for Wertz was allowed to withdraw, and no appeal has been taken from the order of termination. Counsel for Grey said he had not been in contact with her for some time, and she had not contacted him since she was served. He had written letters and called her at the phone number he had for her, but to date there was no response. He said he would continue to search for her before the termination fact-finding hearing set for September 22, 1997.
That hearing began as scheduled. Counsel for Grey asked to withdraw as her court-appointed attorney. Grey was not present and, after efforts to locate her in and around the courthouse failed, the court held a hearing on the motion. Her attorney recounted his diligent efforts to reach Grey, and stated that he had no contact with her for a period of over six months. Noting his "above and beyond" efforts, the trial court granted counsel's request and excused him from further proceedings. The termination proceedings then went forward.
At the termination hearing, the sole witness was the DCFS caseworker who had been assigned to the case for nine months. She testified she had thoroughly reviewed all the case files. She took the court through the history of the case and the various proceedings and orders. The caseworker told the court that she talked to Grey once by telephone in March of 1997 and Grey knew the petition to terminate her parental rights had been filed. During the call, Grey emphatically stated to the caseworker that she did not want her parental rights terminated and promised compliance with court orders. The caseworker never heard from Grey again.
The caseworker also testified she had personal knowledge at the time of the hearing that Grey did not have stable housing and was not currently in treatment. She opined that Grey was probably still using drugs. She discussed the family history and told the court that the great aunt and uncle wanted to adopt the children. No guardian ad litem was ever appointed for either of the girls, and no one asked for an appointment before or during the proceedings.
The trial court ordered termination of Grey's parental rights, concluding that termination *428 was in the best interests of the children, particularly in light of the relatives' interest in adopting them. Findings of fact, conclusions of law, and an order terminating Grey's parental rights were signed and filed on September 22, 1997.
Grey's Aunt Mary contacted Grey to tell her that her parental rights had been terminated. Grey then contacted her attorney who filed a motion to vacate the termination order. Grey claimed, among other things, that she had not been personally served with appropriate notice. Grey stated in her affidavit there was a sufficient change in circumstances to warrant vacation of the termination order and schedule a new trial. Grey did not appear for the hearing on the motion, even though she was notified by counsel, given copies of the pertinent documents, and told the time and place of the hearing. In denying Grey's motion, the trial court responded to all of Grey's reasons for her motion, and specifically found that Grey had been served as required by statute, both by publication and by substitute personal service.
Grey appeals from both the termination orders and the order denying her motion to vacate them. She does not challenge the underlying basis for the trial court's decision that the allegations contained in the petition for termination of parental rights under RCW 13.34.180(1)-(6) were established by clear and convincing evidence. Rather, she says she has become clean and sober and wants another chance.

DISCUSSION
A court's decision to grant or deny a motion to vacate a judgment is within its sound discretion.[2] The decision will not be disturbed on appeal unless the trial court abused its discretion.[3] But courts have a nondiscretionary duty to vacate void judgments.[4] Grey contends the judgment was void because the failure to properly serve her deprived the court of jurisdiction to hear the case.
Proper service of the summons and complaint is a prerequisite to any court's obtaining jurisdiction over a party, and a judgment entered without jurisdiction is void.[5] When a judgment is entered based on an affidavit of service, it should be set aside only upon convincing evidence that the return of service was incorrect.[6] An affidavit of service that is regular in form and substance is presumptively correct.[7] The burden is on the person attacking service to show by clear and convincing evidence that service was improper.[8]
The record does not support Grey's claim that she was never served. A party may be served personally or by leaving a copy of the summons and complaint at the party's usual residence with a person of suitable age and discretion who also lives there.[9] If a party cannot be located after due diligence, the court may authorize service by publication.[10] A party may publish at the same time as efforts to personally serve a party when there is reason to believe that personal service may not be successful.[11]
Here, Grey's whereabouts were not known.[12] She had not been in contact with *429 DCFS or her attorney for many months before DCFS filed the termination action. DCFS believed she had been evicted from her last known address, but when process was served, the return affidavit indicated it was left with and accepted by a co-resident of the house which was her last known address. DCFS's failure to know Grey's address is not fatal because it was Grey's duty to notify DCFS of her whereabouts. Substitute service was done properly, and there were no irregularities in the affidavit. The trial court did not err in finding that substitute service was made at the Edmonds, Washington address on April 6, 1997. Further, counsel conceded the validity of personal service at the September 22, 1997 termination hearing.
Although the summons contained an incorrect preliminary hearing date, Grey failed to appear on any date, including the trial date, which was listed correctly. Nor did Grey attempt to contact her attorney, the caseworker, or the court. Grey provided no information about where she was. She did not provide any explanation for her failure to respond to the efforts of her attorney or DCFS, even though she knew a termination proceeding was set.
Further, Grey does not dispute that she was served properly by publication. Because there is no evidence she was not served by publication and personal service, the trial court did not err in finding valid service of process and did not abuse its discretion in denying the motion to vacate under either CR 59 or CR 60.
Next, Grey argues that her due process right to counsel was violated when her attorney was allowed to withdraw at the beginning of the termination hearing. Parents have a right to counsel at dependency and termination hearings.[13] Her attorney ably represented Grey for four years until the termination proceeding, but because of Grey's own inaction, he could not effectively or ethically represent her through the termination trial.
In a related claim, Grey contends that terminating her parental rights at a default hearing violated her right to due process. The essential requirements of procedural due process are notice and an opportunity to be heard, appropriate to the nature of the case.[14] In determining whether a procedure adequately protects due process rights, the court analyzes three elements: (1) the private interest at stake, (2) the risk that the procedure used will result in error and the probable value of additional or substitute procedural safeguards, and (3) the government's interest in the procedure used and the fiscal or administrative burden, if any, if additional safeguards were provided.[15]
As discussed in In re Dependency of C.R.B., the parent, the child, and the state have competing interests in a termination proceeding. The natural parent has a "fundamental liberty interest" in the care and custody of his or her children. The child has an interest in avoiding erroneous termination, but also has the right to establish a strong, stable, safe, and permanent home in a timely manner. The risk of error in a default proceeding that does not reach the merits of a case is a significant burden on these rights.
In C.R.B., we reversed a termination order because there was an inadequate hearing. But that is not what happened here. Although Grey was not represented by counsel at the termination fact-finding hearing, the trial court heard testimony and made findings on the substantive issues. The court assured that the State established the *430 mandatory factors in RCW 13.34.180 and.190.[16] Due process requires that a hearing be held on the merits of the termination petition. The State must follow the procedural requirements and establish the factual matters set forth in those statutes. A review of the record, the testimony and colloquy between the court, the caseworker, and counsel for DCFS, establishes the requisite safeguards were in place and the underlying proof was by clear and convincing evidence. It certainly would have been preferable if Grey had been able to present her side of the case. But she had notice and chose not to appear. Her attorney could not represent her because he did not even know where she was or what position she would want to take.
"[A] child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact his or her attorney."[17] We agree with the court in C.R.B. that a parent's failure to respond to notices of a proceeding to terminate parental rights does not in itself prevent the State from obtaining a judgment permanently terminating that parent's rights.
Grey also argues that the order terminating her parental rights to her daughters is void because no guardian ad litem was ever appointed to represent the interests of the girls. RCW 13.34.100(1) requires the court to appoint a guardian ad litem for A.G. and T.G.[18] But a court's failure to comply with that requirement is not a jurisdictional defect. Although a judgment terminating parental rights may be voidable by a minor contending his interests were not protected, the order is not void or subject to collateral attack.[19] RCW 13.34.100(1) also allows the court to find that there is good cause for not appointing a guardian ad litem. But where no party brings the issue to the court's attention, its failure to comply with RCW 13.34.100 does not necessarily constitute reversible error.[20]
Here, during the entire dependency and termination process spanning over four years, the record before us shows that no attorney brought up the matter of an appointment of a guardian ad litem to any of the judges or commissioners who made the numerous decisions. No court brought up the matter on its own, and no good cause determination was ever made. While we do not have to reverse for these omissions, the combination of circumstances in this case requires a remand. There is evidence of a close relationship between Grey and her children. Even though Aunt Mary apparently knew where she was, she did not notify Grey of the pending termination. No one was present to investigate the circumstances or speak on behalf of the children. We are not certain that the one-sided story presented to the trial court is ultimately fair to Grey and the children because we cannot be confident that the decision fully serves the best interests of the children when they had no advocate. We therefore remand to the trial court for a hearing to determine whether the children were prejudiced by the failure to appoint a guardian ad litem. If the court determines there was prejudice, it should vacate *431 the judgment, appoint a guardian, and hold another termination hearing. If it determines that the children's interests were not prejudiced, the judgment is affirmed. Because we are mindful of the time that has already passed since these children were placed, the trial court must hold the hearing within 60 days of the mandate.
At oral argument, counsel for DCFS candidly informed us that trial courts regularly fail to appoint a guardian ad litem in these circumstances or find good cause for not appointing one based on lack of resources. This is unacceptable. The statute is mandatory, and the children's interests are paramount. We cannot condone ignoring the statutory provision specifically designed to protect them. If resources are insufficient, DCFS should address the problem with the Legislature.
Affirmed in part, remanded in part, with directions.
BECKER and APPELWICK, JJ., concur.
NOTES
[1] The briefs indicate the name of Grey's sister as Jane, yet the transcript of the hearing of September 22, 1997 indicates the name of Grey's sister as Jennifer. We will refer to her as Aunt J.
[2] Graves v. Department of Game, 76 Wash.App. 705, 717-18, 887 P.2d 424 (1994) (citing In re Marriage of Flannagan v. Flannagan, 42 Wash. App. 214, 222, 709 P.2d 1247 (1985)); Leen v. Demopolis, 62 Wash.App. 473, 478, 815 P.2d 269 (1991).
[3] A court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons, or its decision is manifestly unreasonable. Lindgren v. Lindgren, 58 Wash.App. 588, 595, 794 P.2d 526 (1990).
[4] Leen, 62 Wash.App. at 478, 815 P.2d 269 (citing Brenner v. Port of Bellingham, 53 Wash.App. 182, 188, 765 P.2d 1333 (1989)).
[5] Woodruff v. Spence, 76 Wash.App. 207, 209, 883 P.2d 936 (1994).
[6] Leen, 62 Wash.App. at 478, 815 P.2d 269 (citing Allen v. Starr, 104 Wash. 246, 247, 176 P. 2 (1918)).
[7] Lee v. Western Processing Co., 35 Wash.App. 466, 469, 667 P.2d 638 (1983).
[8] Leen, 62 Wash.App. at 478, 815 P.2d 269.
[9] RCW 4.28.080(15); CR 4.
[10] RCW 4.28.100.
[11] RCW 13.34.080.
[12] We are disturbed by the ease with which Grey's aunt contacted her after the termination was complete. But Grey does not argue that anyone knew and concealed her address from the court or DCFS.
[13] RCW 13.34.090; In re Welfare of Key, 119 Wash.2d 600, 611, 836 P.2d 200 (1992); In re Welfare of Myricks, 85 Wash.2d 252, 254, 533 P.2d 841 (1975).
[14] Burman v. State, 50 Wash.App. 433, 440, 749 P.2d 708 (1988).
[15] In re Dependency of C.R.B., 62 Wash.App. 608, 614-15, 814 P.2d 1197 (1991) (citing In re Detention of Harris, 98 Wash.2d 276, 285, 654 P.2d 109 (1982)). See also, Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
[16] In relevant part, RCW 13.34.190 states that an order terminating all parental rights may be entered when the trial court finds that the petition's allegations, pursuant to RCW 13.34.180(1) through (6), are established by clear, cogent, and convincing evidence; or that an allegation under RCW 13.34.180(7) is established beyond a reasonable doubt; and the order is in the best interests of the child. Here the allegations were pursuant to RCW 13.34.180(1) through (6). Evidence of a clear, cogent, and convincing nature was before the trial court.
[17] C.R.B., 62 Wash.App. at 616, 814 P.2d 1197.
[18] RCW 13.34.100(1) provides:

The court shall appoint a guardian ad litem for a child who is the subject of an action under this chapter, unless a court for good cause finds the appointment unnecessary. The requirement of a guardian ad litem may be deemed satisfied if the child is represented by independent counsel in the proceedings.
See also, JuCR 9.2(b)(1) which allows a court to appoint counsel for a juvenile who has no guardian ad litem.
[19] In re Dependency of O.J., 88 Wash.App. 690, 694-95, 947 P.2d 252 (1997) (citing Newell v. Ayers, 23 Wash.App. 767, 771, 598 P.2d 3 (1979) and Freise v. Walker, 27 Wash.App. 549, 553, 619 P.2d 366 (1980)), review denied, 135 Wash.2d 1002, 959 P.2d 126 (1998).
[20] O.J., 88 Wash.App. at 694-95, 947 P.2d 252.