IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of<br><br>S.M.M., d.o.b. 06/01/11,<br>K.N.M., d.o.b. 12/16/07,<br>I.A.H., d.o.b. 03/10/06,<br>I.A.H., d.o.b. 03/10/06,<br><br>Minor Children.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF CHILDREN,<br>YOUTH, AND FAMILIES,<br><br>Respondent,<br><br>v.<br><br>MICHAEL MURPHY,<br><br>Appellant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 79740-9-I<br>consolidated with<br>No. 79741-7-I<br>No. 79742-5-I<br>No. 79743-3-I<br><br><br><br><br><br><br><br><br><br>PUBLISHED OPINION<br><br>FILED: February 18, 2020 |

VERELLEN, J. — In a dependency, RCW 13.34.100(1) requires the court to appoint a guardian ad litem (GAL) for "any child who is the subject of an action under this chapter, unless a court for good cause finds the appointment unnecessary." In the absence of a finding of good cause, the lack of a GAL generally compels a remand for a hearing to determine whether the child was prejudiced. Both the trial court and the Department of Children, Youth, and

Families (the Department) should guard against overlooking the requirement for a GAL or a good cause finding.

Michael Murphy challenges the court's post-dependency order removing his daughters, K.M. and S.M., and placing them in out-of-home care. A GAL represented the girls at the dependency hearing but withdrew after the court returned the girls to the parents in July 2018. The court did not appoint a new GAL before removing the girls in February 2019. The court did not find good cause that a GAL was unnecessary. Therefore, we remand for appointment of a GAL and a hearing to determine whether K.M. and S.M. were prejudiced by the court's failure to appoint a new GAL prior to ordering removal.

## FACTS

The underlying dependency action deals with four children: two sisters, K.M. and S.M., and their older twin brothers. In May 2018, the court found the girls dependent and determined "[t]he overriding issue in this case is the health and welfare of the children, and most specifically . . . the extremely poor dental health of the children."[1] In the July 2018 dispositional order, the court required the parents to engage in a parenting assessment and any subsequent recommended services.[2] The court also required the children to participate in dental and medical exams.[3] The court returned the girls to the parents' home, subject to the

---

[1] Clerk's Papers (CP) at 139.

[2] CP at 32.

[3] CP at 32.

2

Department's approval of the home. The court also required "all adults in the home [to pass] a background check."[4]

In December 2018, the Department petitioned to remove the girls. The Department cited various issues, including the parents' failure to take the girls to medical and dental appointments.

On December 20, 2018, the court held the first hearing on the Department's removal petition. At the hearing, attorneys represented each of the brothers and informed the court that the brothers wanted the sisters to remain with the parents. Also at the hearing, the father's counsel pointed out the girls' lack of representation:

> This family desperately wants to be together. The children want to be together. I would point out that [K.M.] and [S.M.] have no voice here today. They have no CASA at this time. And there's no one here advocating for them, but everyone else in this family is here asking to be together and asking that this family stay together.[5]

The court reserved ruling until the parents completed parenting assessments. On January 14, 2019, the court held a second hearing on removal. The court again reserved ruling until the parents completed the parenting assessments.

On February 26, 2019, the court held a third hearing on the Department's removal petition. At the hearing, the father again reminded the court about the girls' lack of representation:

---

[4] CP at 31.

[5] Report of Proceedings (RP) (Dec. 20, 2018) at 28 (emphasis added).

These children have been very clear that they want to be together and the family should be reunited. I would point out that we don't hear from [K.M.] or [S.M.] in these proceedings. There is no process. [K.M.] is now 11 and the court should look at some point why she should be represented given the amount of litigation and adversarial nature of this case.[6]

At the conclusion of the hearing, the court entered an order removing the girls and placing them in out-of-home care. The court indicated, "[T]he issue is not whether or not the parents are in compliance with court orders but whether or not the children are safe in the parents' care."[7]

The same problems continue to arise. The parents continue to violate court order after court order after court order. And at this point—and to be completely honest—had the parents complied with the last court orders, based on the parenting assessment, I would have simply ordered intensive family preservation services again rather than removal. . . . I am going to grant the Department's motion at this time. I gave the parents ample opportunity.[8]

The father sought discretionary review on multiple grounds. A commissioner of this court granted review solely on the GAL issue.

ANALYSIS

The father contends the court abused its discretion in removing the girls without appointing a new GAL.

We review "orders issued in dependency cases for an abuse of discretion."[9] RCW 13.34.100(1) provides, "The court shall appoint a guardian ad litem for a

---

[6] RP (Feb. 26, 2019) at 85 (emphasis added).

[7] Id. at 92.

[8] Id. at 93-94.

[9] In re Dependency of D.C.-M., 162 Wn. App. 149, 158, 253 P.3d 112 (2011).

child who is the subject of an action under this chapter, unless a court for good cause finds the appointment unnecessary."

If the court fails to appoint a GAL or enter a good cause finding that appointment was unnecessary, the question becomes whether the child was prejudiced by the lack of a GAL. If the appellate court lacks confidence that the trial court's decision "fully serves the best interests of the children when they had no advocate," remand is warranted for a determination whether the child was prejudiced by the lack of an advocate.[10] However, reversal is not required if the "testimony is so strong that [the appellate court is] confident that a guardian ad litem would have reached the same conclusion as the therapists and the [trial] court."[11]

Here, there was no implicit or explicit finding of good cause to waive the GAL requirement; the only question is whether the lack of a GAL was prejudicial. The Department argues, "[T]he strong evidence of continued harm in this case could not have been refuted by a [GAL]."[12] The Department also contends the GAL could not have provided any more evidence about the parent-child relationship because "all evidence of attachment and love between the parents and children had been fully fleshed out by the parties involved."[13] But these

---

[10] In re Dependency of A.G., 93 Wn. App. 268, 281, 968 P.2d 424 (1998).

[11] In re Dependency of O.J., 88 Wn. App. 690, 696, 947 P.2d 252 (1997).

[12] Resp't's Br. at 17.

[13] Id. at 18.

5

arguments oversimplify the role of a GAL in motions to remove children from the parents' home.

Prior to ordering removal, the court received evidence concerning the girls' dental health, the girls' school attendance, the living conditions in the parents' house, and the parents' refusal to comply with the dispositional order and subsequent requirements. The Department contends this was enough information to make a decision on removal without any input from a GAL. But this logic would circumvent the purpose of RCW 13.34.100. The purpose of the statute is to ensure the children's interests are individually represented to the court.

In In re Dependency of O.J., the mother appealed the court's order terminating her parental rights to her two sons and argued, in part, the court's failure to appoint a GAL was reversible error.[14] At no point during the dependency and termination were the boys represented by a GAL, and no one raised the GAL issue prior to the termination hearing. During the three-day termination hearing, the court heard extensive testimony from various individuals involved with the children, including teachers, therapists, caseworkers, and one of the boy's foster mothers.[15] At closing argument, the mother's counsel raised the GAL issue for the first time. This court noted:

> Had [the mother] drawn the court's attention to its failure to make a finding of good cause not to appoint a guardian ad litem and the

---

[14] 88 Wn. App. 690, 947 P.2d 252 (1997).
[15] Id. at 696.

6

court still failed to act or relied for its finding on something other than good cause, there might well be reversible error.[16]

Ultimately, this court concluded the trial court's failure to appoint a guardian ad litem was not reversible error because the "testimony [was] so strong that we are confident that a guardian ad litem would have reached the same conclusion as the therapists and the court."[17]

In In re Dependency of A.G., the mother appealed the trial court's decision terminating her parental rights to her two daughters.[18] She argued the "termination [was] void because a guardian ad litem was not appointed for either of the children at any time during the proceedings."[19] The court determined:

> [N]o attorney brought up the matter of an appointment of a guardian ad litem to any of the judges or commissioners who made the numerous decisions. No court brought up the matter on its own, and no good cause determination was ever made. While we do not have to reverse for these omissions, the combination of circumstances in this case requires a remand.[20]

The caseworker was the only witness at the termination hearing. But there was evidence of a close relationship between the mother and her children. "We are not certain that the one-sided story presented to the trial court is ultimately fair to [the mother] and the children because we cannot be confident that the decision

---

[16] Id.

[17] Id.

[18] 93 Wn. App. 268, 968 P.2d 424 (1998).

[19] Id. at 271.

[20] Id. at 280-81.

fully serves the best interests of the children when they have no advocate."[21] As a result, this court remanded the case "to the trial court for a hearing to determine whether the children were prejudiced by the failure to appoint a guardian ad litem."[22]

Here, at the three hearings on the Department's removal petition, the court heard from the Department, the father's attorney, the mother's attorney, and the attorney for each of the two sons. Although the father's attorney, mother's attorneys, and the boys' attorneys argued to keep the girls in the home, the court did not hear from an individual representative for the girls. Notably, the GAL could have suggested alternatives to removal or specific conditions on removal.

Ultimately, we cannot predict the GAL's testimony in this case. Unlike O.J., the court was not presented with testimony from any teachers, therapists, or counselors involved with S.M. and K.M. Rather, similar to A.G., we are not certain that the story presented to the trial court is ultimately fair to the girls, who had no advocate.[23] We are not confident that a GAL would have reached the same conclusion as the trial court.[24]

---

[21] Id. at 281.

[22] Id.

[23] See id. at 280 ("We are not certain that the one-sided story presented to the trial court is ultimately fair to [the mother] and the children because we cannot be confident that the decision fully serves the best interests of the children when they had no advocate.").

[24] See O.J., 88 Wn. App. at 696 ("[T]hat testimony is so strong that we are confident that a guardian ad litem would have reached the same conclusion as the therapists and the court.").

8

We also reject the Department's other arguments. First, any contention that the February 2019 removal was an emergency proceeding is not compelling. The Department originally filed the petition for removal in December 2018. The court reserved ruling in December 2018 and again in January 2019 to allow time for the parents to complete a parenting assessment. The court removed the girls in February 2019, after the parents failed to comply with the dispositional order and subsequently-imposed requirements (random UAs and weekly updates concerning housing). Although the court expressed general concern for the safety of the girls, the court did not make an explicit or implicit finding that an emergency existed. And the lack of emergent circumstances is illustrated by the court's continuance of the hearing twice over two months.

Second, we also reject any suggestion by the Department that the requirement of RCW 13.34.100(1) does not apply to this removal proceeding. The Department cannot circumvent the language of RCW 13.34.100(1) requiring the court to appoint a GAL "for a child who is the subject of an action under this chapter." This language does not limit the GAL requirement to dependency and termination trials. And a hearing to remove a child from the parents' home warrants careful consideration.[25]

---

[25] See In re Dependency of J.B.S., 123 Wn.2d 1, 11, 863 P.2d 1344 (1993) (A dependency court must "carefully evaluate" a placement decision because of the potential harm the child may suffer "if effectively severed from contact with [parents, siblings, and caregivers].").

Third, the Department argues RCW 13.34.138(3)(b) does not condition placement on the presence of a GAL. RCW 13.34.138(3)(b) provides:

(b) The following may be grounds for removal of the child from the home, subject to review by the court:

(i) Noncompliance by the parents with the department's case plan or court order;

(ii) The parent's inability, unwillingness, or failure to participate in available services or treatment for themselves or the child, including substance abuse treatment if a parent's substance abuse was a contributing factor to the abuse or neglect; or

(iii) The failure of the parents to successfully and substantially complete available services or treatment for themselves or the child, including substance abuse treatment if a parent's substance abuse was a contributing factor to the abuse or neglect.

The Department's argument ignores the plain language of RCW 13.34.100 requiring a GAL in dependency proceedings under RCW 13.34, which necessarily includes a removal under RCW 13.34.138(3)(b). The GAL requirement set forth in RCW 13.34.100 applies to the removal proceeding in this case. The court and the Department cannot turn a blind eye towards RCW 13.34.100.

Fourth, the Department seems to argue we should not consider the GAL issue, under RAP 2.5, because the father failed to move for the appointment of a new GAL. In A.G., this court acknowledged the failure to comply with the GAL requirement does not necessarily constitute reversible error when no one brings the issue to the court's attention.[26] But here, at both the December 2018 hearing and the February 2019 hearing, the father's counsel mentioned the girls' lack of

---

[26] A.G., 93 Wn. App. at 280 (citing O.J., 88 Wn. App. at 694-95).

representation. The father's counsel adequately called the GAL issue to the trial court's attention.

Finally, at oral argument, the State asserted the GAL requirement was satisfied because the court had generally designated the court appointed special advocate (CASA) program to represent the girls earlier in the dependency. CASAs and GALs perform "substantially the same duties and functions," and CASAs are deemed to be GALs for the purposes of chapter RCW 13.34.[27] Although the volunteer CASA program was designated, no specific volunteer was appointed to represent the girls. And no specific volunteer was present at any of the three hearings on removal. Of course, a general designation of the CASA program that does not result in any actual representation of the children's interests does not satisfy the requirements of RCW 13.34.100. The court must either appoint a specific GAL or make a finding of good cause.

Additionally, we emphasize the role of the Department with regard to RCW 13.34.100. In O.J., the court recognized that "[a]s counsel acknowledged during oral argument, the State should take responsibility to request such a [good

---

[27] RCW 13.34.030(11) ("'Guardian ad litem' means a person, appointed by the court to represent the best interests of a child in a proceeding under this chapter, or in any matter which may be consolidated with a proceeding under this chapter. A 'court-appointed special advocate' appointed by the court to be the guardian ad litem for the child, or to perform substantially the same duties and functions as a guardian ad litem, shall be deemed to be guardian ad litem for all purposes and uses of this chapter.").

cause] finding and not simply overlook it."[28] We agree the Department should remind the trial court to appoint a GAL or enter a finding of good cause.

Here, we conclude a remand for appointment of a GAL and a rehearing on the removal motion with input from the GAL is appropriate. The existing removal order and placement will remain in effect while the court holds that hearing.[29] As conceded by the father at oral argument, the court may consider evidence of the current circumstances at the time of the hearing.

Therefore, we remand for appointment of a guardian ad litem and a hearing to be conducted as soon as practicable to determine whether K.M. and S.M. were prejudiced by the court's failure to appoint a new guardian ad litem prior to ordering removal. If they were prejudiced, then the trial court will have the authority to alter the placement in light of the current best interests of K.M. and S.M.

WE CONCUR:

_____

_____          _____

---

[28] O.J., 88 Wn. App. at 696.
[29] See A.G., 93 Wn. App. at 281.

12